## Erie Firefighters Local No. 293 v. Gardner, Mayor

*Charles K. Moffet,* for plaintiff.

*Alexander F. Barbieri,* for City Fire Fighters' Association.

*Gerald J. Weber,* City Solicitor, and *Thomas S. Mszanowski,* Assistant City Solicitor, for defendants.

LAUB, J., June 23, 1961.—Plaintiff union, the bargaining agent for the paid firemen of the City of Erie, brought this action in mandamus against the mayor and the councilmen of the city, to compel the enactment of certain ordinances recommended by a panel of individuals constituted as provided by the Act of June 30, 1947, P. L. 1183, as amended, 43 PS §215.1. Defend-

ants have filed preliminary objections but have not specified how we are to consider them. Under Pa. R. C. P. 1017 (b) there are five permissible types of preliminary objections, but those filed in this case fail to designate the type intended. However, since the objections pray for the dismissal of the action, we shall consider them as though in the nature of a demurrer.

The filed complaint supplies a history of the events which bring the matter before us. It reveals the existence of a long-continued dispute between defendants and the firemen with respect to pensions and longevity pay, and that, to bring matters to a head, recourse was had by the parties to the grievance procedure established by the Act of 1947, supra. As provided in that act, three individuals were appointed and hearings were held before them to determine the merits of the controversy. On March 20th, the panel submitted its findings to the Mayor and Council of the City of Erie, recommending the adoption of a longevity pay plan according to a submitted schedule of tenure. It also recommended the adoption of a survivors' and dependents' pension plan to be financed by equal contributions by the firemen and the city, such contributions to be equal to one percent of the firemen's pay. Both plans were to be made effective April 1, 1961. The findings of the panel were considered by the council during an official session held March 24, 1961, and two resolutions were presented respecting them, one to consider the findings for implementation in the 1962 budget, and the other to adopt the findings effective April 1, 1961. The first resolution passed, the second failed. The firemen then authorized plaintiff to institute the present action on their behalf.

The sole difficulty before us is whether we have the duty and power to command the Council of the City of Erie to pass ordinances consonant with the findings of the negotiation panel. This, of necessity, requires a con-

sideration of the principles peculiarly applicable to the action of mandamus as well as the provisions of the 1947 statute. We are not, of course, passing upon the merits of the recommendations or the validity of the grievances presented by the firemen, for we are required by law to concern ourselves solely with the legal problem which is before us.

The Act of 1947 was an obvious attempt by the legislature to provide some type of grievance machinery in aid of public employes who, by proscription of law, are forbidden to go out on strike. In summary, that portion of the statute with which we are most concerned provides for the filing of the findings of the panel with the governor, the general assembly, and the head of the agency or political subdivision involved. The act then provides that upon receipt of the report, the governor or head of the State agency or political subdivision involved shall take the proper administrative measures consistent with rules, regulations, and policies established by the governor, the executive board and the Civil Service Commission, to comply with the findings of the panel. If the person receiving the report finds that the situation can be remedied only by legislative action, the said person shall refer the matter to the proper lawmaking body "for correction."

Although counsel for both sides have referred in their briefs and during argument to the Act of 1947 as an "arbitration" statute, it is clear that the act possesses none of the usual essentials which accompany statutes of that nature. While it provides for the holding of hearings in the event that negotiation and informal conferences fail to accomplish an adjustment of differences, no provision is made for the issuance of subpoenas, the swearing of witnesses or the entry of a decision having the force of a jury's verdict or judgment, all matters which usually accompany a statute designed to arbitrate difficulties between disputants. What the

act does is, as stated by Mr. Justice Musmanno in his dissent to Broadwater v. Otto, 370 Pa. 611, 621, ". . . provide a vehicle for the airing of employes' grievances if and when they should arise." In essence, therefore, this is a conciliation or mediation proceeding, and not precisely one of arbitration, although the term is not objectionable as a convenient method of expression.

The City of Erie is a city of the third class and, as such, has a form of government which has often been referred to as a "commission" type of government. As provided in the Third Class City Code, Act of June 23, 1931, P. L. 932 (hereinafter to be referred to as "the code") its government consists in the usual legislative and executive branches. The legislative power is vested in a council composed of the mayor and four councilmen (section 1002, 53 PS §36002) and the executive and administrative powers are distributed among five departments as determined by the council (sections 1101, 1102, 53 PS §§36101, 36102). The mayor is designated as the chief executive (section 1202, 53 PS §36202) and, as such, is probably the individual to whom the panel should have initially sent its findings. It would then be the mayor's duty to refer the matter to council if the panel's recommendations could not be made effective by administrative measures. However, since the findings eventually were considered by the council, the failure to strictly comply with the mandates of the Act of 1947 is not fatal.

Turning now to the panel recommendations themselves, we find that the suggested course of action could not have been executed by administrative action. The code, sec. 902, 53 PS §35902, provides that the council shall prescribe, *by ordinance*, the number, duties and compensation of city officers and employes, and further provides that if an officer countersigns any warrant, passes, or pays any voucher contrary to its provisions, he shall be guilty of a misdemeanor. Therefore, if any

of the defendants had presumed to adopt and execute the longevity pay recommendation of the panel, without first having secured an authorizing ordinance, the offending officers would have been guilty of a crime. Similarly, although the code, sec. 4320, 53 PS §39320, authorizes the establishment of a pension plan of the type recommended, once again it is provided that such plans be established "by ordinance." It becomes obvious, therefore, that the recommendations could only have been made effective by legislation and not by administrative decree or action. This means that the panel findings necessarily had to be referred to the councilmanic body as such. As shown by the complaint, this is precisely what took place. Since the city council refused to enact the necessary legislation, the first question to be answered is whether this was violative of the 1947 Act.

As already noted, the statute is silent with respect to the duty of the lawmaking body of a political subdivision once it receives the findings of a conciliation panel. Neither the statute itself nor its title contains any indication that the findings are to be considered binding on the lawmakers. The direction to refer the matter to the lawmaking body "for correction" is a cryptic description of the reason for the referral; it is not a mandate to make the correction. It is at least doubtful that the legislature could bind itself or subsequent sessions of the general assembly to a commitment of this sort, and it is equally doubtful that it had such intention. At any rate, had it intended to bind the other lawmaking bodies of the Commonwealth to such a course, it could easily have said so. It did not, and we can find no precedent or statute authorizing us to write it into the law.

There is some logic in plaintiff's contention that since the legislature intended to supply a remedy to public employes in place of the right to strike which has been

denied them, it must have intended to furnish a remedy which would be adequate. Plaintiff points out that if the city council is not bound by the panel recommendations, there are no teeth in the legislation, and the firemen are left without redress. However, the question whether a remedy is adequate is largely one of opinion, for that which is adequate to one may be thoroughly inadequate to another. In the absence of a legislative expression to the contrary, we must assume that the general assembly considered the present procedure sufficiently adequate to serve the purposes intended. What has been provided is a forum in which aggrieved employes may air their demands, thus supplying a vehicle for bringing into focus the pressure of public opinion. Whereas prior to the act public employes were not supplied with a bargaining counter over which to present their claims, they now have an enjoining proceeding which forces the heads of government to lend an attentive ear. The fact that the results of conciliation cannot mandatorily be molded into a conclusive determination is not persuasive that the legislature did not regard the established machinery as adequate for the purpose intended.

The preparation and enactment of measures into law is not a simple process. It is one which requires expert knowledge of all phases of public government, including a complete grasp of the immediate needs of all segments of those governed. What is of advantage and desirable to one portion of the public may be far outweighed by the disadvantages to a greater portion. The responsibilities of the lawmaking bodies extend to every citizen, to every group, and to the population as a whole and lawmakers cannot legislate for the benefit of one person or group without serious consideration of the effect to be felt by the rest of the citizenry. In the matter of public salaries, for example, consideration must be had for the financial condition of the political subdivision involved, and such things must be weighed as

budgets, income, taxes, the relative responsibilities and training of employes in differing classes and the importance of the duties reposed in them. These call for a high degree of knowledge and discretion, and it is not likely that the legislature, in view of its own experience in such things, intended by this act to supplant such knowledge and discretion with the views of a semi-official body, not selected by the elective process, which is interested solely in a single phase and problem of government. The recommendations with which we are here concerned illustrate this point with poignancy. They include the creation of a survivors' and dependents' pension plan to be financed by matching contributions by the firemen and the city of one percent of the firemen's pay. This plan, the recommendation suggests, should be operated by a separate and independent organization, administered conjointly by the firemen and the city. Not only does this usurp the discretion specifically reposed in the city council by sections 4320-4324 of the code, but it also is in conflict with the specific provisions of the sections mentioned with reference to the management of the funds and the formula for computing contributions, etc.

With respect to the longevity pay plan, it should also be noted that the panel recommended payments according to a set schedule of tenure, effective April 1, 1961. There is no indication where, in the budget, such increases are provided for and, without such provision, pay increases would be unauthorized. This recommendation, in effect, asks council to do something which it would not be authorized to do under the law. See section 1804 of the code, 53 PS §36804.

We are of opinion, therefore, that the Act of 1947 does not require council to adopt the findings and recommendations of the panel. With respect to the creation of a general pension system, it may be that the firemen have grounds for an action in mandamus under what appears to be the mandatory language of the code,

but that is not involved here. The complaint prays that we enter a judgment commanding defendants to take the proper legislative steps commensurate with the findings of the conciliation panel. This limits us to the question of enforcing the recommendations, particularly since the matter of longevity pay increases is also involved.

Assuming, for the purposes of discussion, that the Act of 1947 does require council to adopt the panel's findings in toto, the question then arises whether the act is constitutional. Article 3, sec. 20, of the Pennsylvania Constitution provides:

"The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

Would the conferring of power in a panel of conciliators to bind the city to enact legislation infringe this provision? As a fundamental proposition, it must be recognized that the current trend toward the use of administrative bodies has produced a number of situations in which the question of delegation of powers has become important. Without reviewing the host of cases in which this problem has arisen in this and other States, the basic distinction between delegable and non-delegable functions, apart from the proscription against levying taxes, seems to be this: If the delegation of power is to make the law, which involves a discretion of what the law shall be, then the power is nondelegable. If the conferred authority is the power or discretion to execute the law already determined and circumscribed, then the delegation is unobjectionable. If we are correct in this interpretation of the rule, then there is no question but that the power to fix municipal salaries and to create a pension plan is nondelegable

under our Constitution, for these matters, as have been mentioned above, are pure municipal functions. We are of opinion, therefore, that if the Act of 1947 makes the findings of the panel of conciliators binding upon the city in so far as the creation of municipal ordinances is concerned, then that portion of the act which so states is unconstitutional and cannot be enforced in this proceeding.

In summary, we conclude that (1) the act does not require defendants to enact the legislation as prayed for, and (2) if it does, it cannot be enforced because it attempts to delegate a nondelegable function under the Constitution. It is not necessary, therefore, to decide the other questions raised by defendants, including the question whether the suit should have been instituted on the relation of the district attorney or, if not, whether the firemen's union has standing to initiate it. It is only necessary to add a brief summary of the legal principles which apply here.

It is axiomatic that mandamus will not lie to control the exercise of discretion or judgment on the part of a public official: Land Holding Corp. v. Board of Finance and Revenue, 388 Pa. 61, 68. It is available only where there is a clear legal right in plaintiff and a corresponding duty in defendant, and the act requested is not discretionary but only ministerial: Garratt v. Philadelphia, 387 Pa. 442, 448. Under these principles, it is clear that the present action must fall. If we cannot compel the performance of an act which is discretionary and not ministerial, then we cannot compel defendants to enact the required legislation for, as pointed out above, the legislative function is purely discretionary. What is more, any attempt on our part to interfere with council's legislative function would be an unwarranted usurpation of power which, by law, has been reposed in the legislative branch of government and not the judicial branch. If defendants have

acted unwisely in refusing to take the desired steps, they are answerable to the city electorate, but not to the court. The judicial arm of government is equal to the legislative arm but not superior to it. We are convinced that had defendants refused to submit the current disputes to conciliation as required by the act, or had they refused to consider the recommendation of the panel, we could compel them to follow the directions of the statute, but since they have followed the statute in this regard, the power of the court to interfere has passed into nothingness.

And now, to wit, June 23, 1961, the preliminary objections in the nature of a demurrer are sustained and the action is dismissed.