Harney *v.* Russo et al., Appellants.

184

Argued March 19, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*C. Norwood Wherry,* for appellant.

*A. A. DiSanti,* with him *Howard Richard,* and *Richard, Brian & DiSanti,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, June 27, 1969:

This case presents a head-on attack, under both state and federal constitutions, upon the validity of the Act of June 24, 1968, P. L.    , 43 P.S. §217.1 et seq. Appellees, police officers and police chief in the Borough of East Lansdowne, brought a mandamus action to compel appellants, the Borough Council of East Lansdowne, to enact legislation to carry out the award made by a board of arbitrators in accordance with the Act of June 24, 1968. The act in question authorizes collective bargaining between policemen and firemen and their public employers, provides for arbitration to settle disputes when the parties have bargained to an impasse, and makes the determination of the arbitrators binding upon the public employer and the employees. The court below denied appellants' preliminary objections in the nature of a demurrer, granted appellees' motion for a summary judgment, and appellants took this appeal,[1] claiming: (1) that the act is not authorized by the Amendment to Article III, §31 of the Pennsylvania Constitution; (2) that the act violates Article II, §1 of the Pennsylvania Constitution; (3) that the act is invalid under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; and (4) that the act denies to appellants rights guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.[2] We reject all of ap-

---

[1] Appellees have moved to quash the appeal, claiming in short that a municipality has no standing to raise the constitutionality of an act of Assembly concerning its governmental functions. We believe that appellants can be viewed as raising in reality, in their individual capacities, the rights of all the citizens of the borough, and we thus deny the motion to quash and reach the merits of appellants' contentions.

[2] Appellants did not press in their brief or at oral argument and apparently have abandoned the claim that summary judgment

pellants' arguments and affirm the decision of the court below upholding the statute.

## Pennsylvania Constitutional Issues

An historical analysis is necessary in order to properly decide the issues presented under the Pennsylvania Constitution. Prior to the passage of the Act of June 24, 1968, labor disputes between policemen and firemen (and other "public employees") and their public employers were settled under the Act of June 30, 1947, P. L. 1183, as amended, 43 P.S. §215.1. In *Erie Firefighters Local No. 293 v. Gardner,* 406 Pa. 395, 178 A. 2d 691 (1962), this Court held, by affirming per curiam on the opinion of Judge LAUB in the court below, 26 Pa. D. & C. 2d 327 (1961), that the Act of June 30, 1947, was not binding on the public employer, and alternatively,[3] that if it was binding, it would violate Pennsylvania Constitutional Article III, §31.[4]

At the time of the *Erie Firefighters* decision, Article III, §31 provided that "The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or

---

was improper because the answer denied factual allegations of the complaint.

[3] We cannot accept the argument that the constitutional decision in *Erie Firefighters* was merely dicta and should not be considered by us now. The fact that the Court in *Erie Firefighters* believed that a statute binding the public employer would be unconstitutional was surely a relevant factor in the Court's decision to interpret the statute as *not* binding the public employer. In any event, we can be relatively certain that the constitutional and legislative responses to *Erie Firefighters,* discussed in the text of this opinion, *infra,* did not turn on nice questions of which part of the *Erie Firefighters* decision was holding and which part was dicta.

[4] Article III, §31 was then numbered Article III, §20, having been renumbered May 16, 1967.

otherwise, or to levy taxes or perform any municipal function whatever." If the arbitrators' award were held to be binding on the public employer, *Erie Firefighters* ruled that Article III, §31 would be violated, since "the power to fix municipal salaries and to create a pension plan is nondelegable under our Constitution, for these matters . . . are pure municipal functions." 26 Pa. D. & C. 2d at 334-35.

As a response to the *Erie Firefighters* case, an amendment to Article III, §31 was presented to and passed by the electorate. As a result, a second sentence has been added to Article III, §31, providing: "Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings."

Confident that this amendment had put to rest the constitutional concerns raised in *Erie Firefighters*, the General Assembly enacted the Act of June 24, 1968. Appellants now maintain, however, that the new act violates the amendment, because no standards are provided and thus the arbitrators need not act "in accordance with law" as required by amended Article III, §31. This argument really derives from appel-

lants' alternate claim that the act violates Article II, §1, which has not been amended and which provides that "the legislative power of this Commonwealth shall be vested in a General Assembly," a provision which bars the standardless delegation of legislative power. See, e.g., *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors*, 418 Pa. 520, 211 A. 2d 487 (1965).

Initially, we do not believe that the phrase "in accordance with law" in amended Article III, §31 means what appellants claim it does. Rather than referring to other parts of the constitution—such as Article II, §1—we believe that "in accordance with law" merely means that the arbitrators, in conducting their hearings and making an award, may not violate the requirements of due process and must adhere to the mandates of the enabling legislation. Since the amendment to Article III, §31 is designed to permit the type of arbitration procedure overturned in *Erie Firefighters* "notwithstanding the foregoing limitation [the one in Article III, §31 which was the basis for *Erie Firefighters*] *or any other provision of the Constitution*" (emphasis added), it would seem rather odd to rule that the requirement that the arbitrators act "in accordance with law" indeed *did* require that the procedure adhere to the requirements of another "provision of the Constitution," namely, Article II, §1.

This reasoning would also seem a sufficient answer to appellant's argument that the Act of June 24, 1968, is in violation of Article II, §1 as such. Although it is true that Article II, §1 technically has not been "amended," the amendment to Article III, §31 *explicitly* states that an arbitration statute of the type overturned in *Erie Firefighters* and under attack in the case now before us is insulated from constitutional overthrow not only under Article III, §31, but also under *"any other provision of the Constitution."* To

hold that the statute before us is invalid because it does not contain the standards necessary under our decisions interpreting Article II, §1 would be to directly contradict the language of the Amendment to Article III, §31, and would violate its obvious intendment as well.

Beyond this, even if Article II, §1 did apply, the Act of June 24, 1968, would nonetheless be valid under our decision in *Amalgamated Transit Union Div. 85 v. Port Auth. of Allegheny Cty.*, 417 Pa. 299, 208 A. 2d 271 (1965). In *Amalgamated Transit* we held valid the arbitration procedure of the Act of April 6, 1956, P. L. (1955) 1414, §13.2, added October 7, 1959, P. L. 1266, §13, 55 P.S. §563.2. That act contained no greater "standards" to guide arbitrators than the statute in the case before us, but we nonetheless held that "the Legislature has announced its policies and that both the Authority and the Board of Arbitrators have standards sufficient to guide them in executing the legislative will." *Id.* at 307, 208 A. 2d at 275. We found "an overriding legislative purpose to foster peaceful relations between the Port Authority and its employees and thereby to protect the public interest in transportation by preventing transit stoppages caused by labor disputes." *Id.* at 303, 208 A. 2d at 273. This suffices to protect a statute from attack under Article II, §1. Likewise in the case before us, there is an obvious legislative policy to protect the public from strikes by policemen and firemen, public employees who hold critical positions.

To require a more explicit statement of legislative policy in a statute calling for labor arbitration would be sheer folly. The great advantage of arbitration is, after all, the ability of the arbitrators to deal with each case on its own merits in order to arrive at a compromise which is fair to both parties. The arbitrators' services are particularly valuable where, as the

legislative scheme here requires, the parties have been unable to reach an agreement through collective bargaining. Certainly that is what the Legislature envisioned in its attempt to insure labor peace in this critical public area, and this is adequate under Article II, §1.

Appellants argue that *Amalgamated Transit* is distinguishable from this case because there, we noted that "neither the Port Authority nor the board of arbitrators can incur public debts, levy or collect taxes, or make laws." *Id.* at 306, 208 A. 2d at 275. This statement, however, in reality could go only to the validity of the act there in question under unamended Article III, §31 as interpreted in *Erie Firefighters.* The amendment to Article III, §31, of course, solves any problem created by the fact that the public employer here, unlike the one in *Amalgamated Transit,* has the power to incur debt and levy taxes and may well be forced to do so in order to carry out the arbitrators' award. Our holding in *Amalgamated Transit* that the arbitration provision was valid under Article II, §1 in no way could have relied on the public employer's inability to incur debt, since this factor is irrelevant to whether the Legislature has improperly delegated its powers.

In summary then, we hold that the Act of June 24, 1968, is valid under the Pennsylvania Constitution. We thus must reach appellants' claims that the statute violates the Constitution of the United States.

### Federal Constitutional Issues

Appellants first maintain that the Act of June 24, 1968, violates the "one man, one vote principle" and thus is prohibited by the Fourteenth Amendment's Equal Protection clause. See *Reynolds v. Sims,* 377 U.S. 533, 84 S. Ct. 1362 (1964); *Baker v. Carr,* 369 U.S. 186, 82 S. Ct. 691 (1962). Appellants argue that

the Act of June 24, 1968, provides that the arbitration panel consist of three members, one chosen by the employees, one by the employer, and a third agreed upon by the first two.[5] Thus appellants contend that all citizens do not have an equal say in the composition of the panel. Since the panel's decision will determine the spending of certain public funds, appellants maintain that it is performing the function of a local governmental unit and is thus brought within the one man, one vote principle by *Avery v. Midland County,* 390 U.S. 474, 88 S. Ct. 1114 (1968).

We need not pass on whether the procedure in question violates the one man, one vote principle, because we believe that one man, one vote is not applicable to this situation. The case before us is controlled by *Sailors v. Board of Education of Kent County,* 387 U.S. 105, 87 S. Ct. 1549 (1967), in which the Supreme Court of the United States concluded that "at least as respects nonlegislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here." *Id.* at 111, 87 S. Ct. at 1553.

*Sailors* involved a challenge to the procedure for selecting county school boards in Michigan. Although local school boards were elected, presumably in accordance with the one man, one vote principle, the county boards were chosen by delegates from the local boards. Each local board received one vote, regardless of the population represented by that board. Despite this, the Court held the procedure to be constitutionally permissible because the boards were not legislative in character.[6]

---

[5] If there is no agreement as to the third arbitrator, the American Arbitration Association nominates three, with each arbitrator having the right to eliminate one, the one remaining becoming the third member and chairman of the panel.

[6] Since no election was involved, the Court was not faced with the question whether *if* an election were held, it would need to be

An examination of the functions of the boards in *Sailors* readily shows that if they were properly characterized as nonlegislative, the arbitration panels before us certainly could not be considered legislative in nature. The county school boards in *Sailors* were charged, inter alia, with the appointment of county school superintendents; preparation of annual budgets and tax levies; distribution of delinquent taxes; establishing various cooperative educational programs for constituent school districts; hiring teachers for special programs; and transferring areas from one school district to another. *Id.* at 110, n. 7, 87 S. Ct. at 1553, n. 7. It is clear, in light of the broad functions exercised by these boards, including budgeting and the levying and distribution of taxes, that the mere fact that the arbitration panel in the case before us could affect the spending of public funds is clearly not sufficient to make that body "legislative" and thus subject to the one man, one vote principle. As the Court said in *Sailors,* "viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions. We see nothing in the Constitution to prevent experimentation." *Id.* at 110-111, 87 S. Ct. at 1553.

Finally appellants argue that they are being denied due process because they can be held in contempt for not implementing the arbitration award, even though the taxation limitations of The Borough Code, Act of February 1, 1966, P. L. (1965) 1656, No. 581, §1302, 53 P.S. §46302, leave them with insufficient funds to do so. However, as appellees point out, there is no indication on this record that appellants would be

conducted in accordance with the one man, one vote principle, even though the chosen bodies were nonlegislative. 387 U.S. at 111, 87 S. Ct. at 1553. Since no election is held in the case before us, we likewise need not pass on that issue.

unable to permissibly raise the tax millage so as to pay the arbitrators' award.[7] Furthermore, if we do hear a case in which the tax millage, as a matter of record, cannot permissibly be raised so as to provide sufficient funds to pay the required benefits to the employees, it will still be open to this Court to rule that the Act of June 24, 1968 impliedly authorizes a court-approved millage ceiling increase to pay the arbitration award where necessary, or to hold that the municipal budget must be adjusted in other places in order to provide resources for policemen's or firemen's salaries. Until this issue of statutory construction is presented by an aggrieved party, we of course will not pass on it; suffice it to say here that appellants present no claim on this record that discloses a due process deprivation.

The order of the Court of Common Pleas of Delaware County is affirmed.

---

[7] Rather, appellees argue the off-the-record indication is to the contrary. The record does show that the Borough, with no apparent economic difficulty, already has been able to prepare a budget incorporating the arbitration award.