### Borato v. Town Council of the Borough of Midland

*Arthur S. Herskovitz* and *Robert E. Kunselman,* for plaintiffs.

*Robert J. Masters* and *Thomas H. Lane,* for defendants.

ROWLEY, J., November 6, 1969.—Plaintiffs are police officers in the Borough of Midland, Beaver County, Pa. Defendants are the Town Council of the Borough of Midland and the individual members of council. Plaintiffs filed a complaint in mandamus asking that defendants be directed to appoint an arbitrator and proceed with arbitration pursuant to the Act of June 24, 1968 (Act No. 111), 43 PS §§217.1, et seq. An answer was filed by defendants and a hearing was held.

The borough's fiscal year is the calendar year. There are 13 members in the Midland Police Department. On September 10, 1968, at a department meeting, three police officers were appointed as a negotiating committee to meet with the council and mayor concerning the terms of their employment for the year 1969. On September 11, 1968, the negotiating committee met with the mayor and the members of council prior to council's regular meeting. At that time, the proposals submitted by the police negotiating committee were rejected. The mayor made a counterproposal on behalf of the borough. After some discussion among the members of the negotiating committee, the mayor's counterproposal was rejected and council was notified that the members of the police department desired to proceed to arbitration. Sergeant Tepovich, one of the members of the negotiating committee, polled the members of the police department personally or by phone at about 8 p.m. that evening. He was unable to reach one of the patrolmen and the chief declined to vote. Ten of the members of the department voted to go to arbitration and one member voted "No." As a result of this poll by Sergeant Tepovich, he prepared a written statement, which read as follows:

"Please be informed that the members of the Midland Police Department have voted to go on record

for binding arbitration. We sincerely wish that this arbitration will not be necessary. The City Council has thirty (30) days to consider your request. Thank you in advance. Yours truly, Sergeant George Tepovich."

There followed the names of the 13 members of the police department, together with an indication of how each one had voted. The letter was mailed to the borough solicitor, as directed by the mayor and council, and received by him on September 12, 1968.

At approximately 1:30 a.m., on September 12, 1968, some of the police officers met in the chief's office at the borough building and eight of them signed a letter addressed to defendants and the mayor which reads as follows:

"Gentlemen, regarding the wage proposal offered to the members of the Midland Police Department at the meeting last night.

"Most police officers concerned are in favor of the mayor's proposal. We feel that we were not fully informed on the mayor's and the members of council offer."

Four of the plaintiffs were among the eight officers who signed that communication. There were no further meetings or communications between the parties concerning the matter until approximately January 11, 1969. In the meantime, the borough budget had been advertised as required by law and adopted by the borough on December 27, 1968. On January 11, 1969, 10 of the police officers addressed a letter to the president of council stating that no agreement had been reached in accordance with Act No. 111 and concluding that arbitration was necessary and stating their wish to proceed in accordance with their notice given to the borough on September 12, 1968. In this letter, the police officers designated Attorney Arthur S. Herskovitz as their arbitrator. The borough solicitor, on January 13, 1969, replied to the letter of the

police officers, stating that a majority of the police department had accepted the mayor's proposal which had been made on September 11, 1968. Plaintiffs filed their complaint in this action on January 29, 1969. We have concluded that the complaint must be dismissed.

The Act of June 24, 1968, was enacted by the legislature to implement section 31, art. 3, of the Pennsylvania Constitution adopted in 1967. The constitutionality of the act was upheld in Harney v. Russo, 435 Pa. 183 (1969). Mr. Justice Roberts, writing for the court, said, at page 185:

"The act in question authorizes collective bargaining between policemen and firemen and their public employers, provides for arbitration to settle disputes when the parties have bargained to an impasse, and makes the determination of the arbitrators binding upon the public employer and the employees."

Under this act, policemen and firemen throughout the Commonwealth obtained certain rights which they had not previously enjoyed. However, a careful analysis of the provisions of the act show that the legislature set up a very specific and detailed timetable for the exercise of those rights. Deadlines were established for (1) the commencement of collective bargaining; (2) the request for submission of the unresolved issues to arbitration; (3) the appointment of the board of arbitrators; (4) the commencement of arbitration proceedings; (5) the conclusion of the arbitration proceedings; (6) the necessary legislative enactments to implement the award of the arbitrators, and (7) the effective date of such legislative action. Collective bargaining must commence at least six months before the start of the next fiscal year. A request for arbitration must be made at least 110 days before the start of the next fiscal year. Both sides have five days in which to appoint an arbitrator after

a request for arbitration is made. The method of selecting the third arbitrator and the time within which it must be done are carefully spelled out by the legislature. The board of arbitration must commence its work within 10 days from the date of the appointment of the third arbitrator and a determination must be made within 30 days of the same date. The public employer, in this case the borough, must enact the necessary legislation within 30 days from the date of the award, and the effective date of such legislation is the first day of the subsequent fiscal year. It is to be noted that not only is a very specific timetable set forth by the legislature, but that timetable is keyed to the public employer's next fiscal year. For example, collective bargaining, the request for arbitration and the effective date of the necessary legislation are all computed or determined as of the first day of the subsequent fiscal year. In the present case, since the borough's fiscal year is the calendar year, it was necessary that collective bargaining begin no later than July 1, 1968, and a request for arbitration be submitted no later than September 12, 1968. In Local 736, International Association of Firefighters v. City of Williamsport, 47 D. & C. 2d 317 (Lycoming Co., 1969), the court held that the timetable provisions of the act are mandatory and that time is of the essence. In that case, the request for arbitration was made on September 17, 1968, and an action by the firemen, in mandamus, to compel arbitration was dismissed. Although the legislative journals of the general assembly throw no light on the question, we think it is clear that the legislature intended that all arbitration proceedings would be completed sometime in November, so that council would have sufficient time to prepare an appropriate budget and enact the necessary tax legislation. To hold otherwise would make the very detailed and specific timetable provisions of the

act unnecessary and useless. We are not to presume that the legislature intended such a result.

In this case, the letter from Sergeant Tepovich, although received by the borough on September 12, 1968, did not specify the issue or issues in dispute as is required by the act. Moreover, there is no evidence that collective bargaining commenced until September 11, 1968. However, even if we were to overlook these two requirements, we would still be compelled to reach the same result. At approximately 8 p.m. on September 11, 1968, Sergeant Tepovich polled the members of the police department, either personally or by phone. He notified the appropriate borough officials orally and then during the early morning hours of September 12th reduced the results of his poll to writing and caused the written request for arbitration to be delivered to the borough on that same day. However, as we have already pointed out, at approximately 1:30 a.m. on September 12th, or some five and one-half hours following Sergeant Tepovich's poll, a majority of the police officers signed a statement stating that they were in favor of the mayor's proposal. It is to be noted that the act provides that the policemen may appoint representatives to handle the matter for them provided the appointment is by 50 percent or more of the policemen. In this case, the borough officials had every right to believe that since more than 60 percent of the department had indicated an approval of the mayor's proposal, the request for arbitration had been abandoned. Thereafter, nothing further was done by plaintiffs during 1968. No arbitrator was appointed by them, as required, within five days of their request for arbitration. Under these circumstances, the letter signed by a majority of the police officers on September 12th favoring defendant's proposal, coupled with plaintiffs' failure to name an arbitrator within five days, and their continued

silence for more than four months, during which time defendants adopted the borough budget and levied their taxes for 1969, effectively estops plaintiffs from asserting a contrary position at this time. Under these circumstances, we hold that plaintiffs forfeited their right to compulsory arbitration under the act for the fiscal year 1969.

## ORDER

Now, November 6, 1969, the complaint is dismissed and judgment entered in favor of defendants.