## Lebanon Lodge Fraternal Order of Police No. 42 v. Swanger

*George E. Christianson,* of *Lewis, Brubaker, Whitman & Christianson,* for plaintiff.

*R. Hart Beaver,* for defendants.

GATES, P. J., January 12, 1973.—Plaintiffs are police officers of the City of Lebanon, Pa. They have instituted this mandamus action to compel the City of Lebanon to enact legislation to carry out the award made by a board of arbitrators in accordance with the Act of June 24, 1968, P. L. 237 (No. 111) sec. 1, et seq., 43 PS §217.1. The act authorizes collective bargaining between policemen and firemen and their public employers. It provides for arbitration to settle disputes when the parties have bargained to an impasse and makes the determination of the arbitrators binding upon the public employer and the employes. The award of the arbitrators is unappealable.

The act specifically provides that policemen ". . . have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits . . ."

It is not necessary for us to write here a chronicle of the dispute between the Lebanon City policemen and the Lebanon City Council. Its history is spread upon the records of this court and the Commonwealth Court of Pennsylvania. The result of those prior proceedings was a directive to the parties to get on with the matter of negotiating or arbitrating and settle the dispute in accordance with the Act of 1968.

Having reached an impasse in the negotiations, arbitrators were duly appointed under the terms of section 4 of the Act of 1968. An arbitration hearing was held on August 28, 1972. On September 18, 1972, the arbitrators filed an award covering 15 categories of

the terms and conditions of employment submitted to them. The award of all benefits is made retroactive to January 1, 1972.

To this date, city council has failed in all material aspects to implement the award of arbitrators. The alleged reasons for not immediately implementing the arbitrators' award as set forth in defendants' answer are:

"(a) Pension Fund benefits are not negotiable under the Act of Assembly which gives uniformed employees the right to bargain collectively.

"(b) The Board of Arbitration has no authority to award pension benefits.

"(c) If pension benefits are negotiable and if the Board has the authority to award pension benefits, the Act of this Board of Arbitration in awarding said benefits was capricious in that the Board of Arbitration failed to make an actuarial study involving the ramifications of their award and failed to consider the actuarial study referred to in paragraph no. 29 hereof."

At a hearing on the petition, answer, new matter and reply to new matter, the city acknowledged that the pension fund benefits are negotiable but still insisted that the award made by the Board of Arbitration was capricious in that it failed to make an actuarial study involving the ramifications of their award, and that the board further failed to consider the actuarial study that was made for the city in 1971. The city claims, however, that the arbitrators were told that the pension fund was actuarially unsound.

It is no longer open to question that the Public Employees Collective Bargaining Act is valid legislation. Its validity against State and constitutional attacks have been disposed of by our Supreme Court in Harney v. Russo et al., 435 Pa. 183 (1969). The court specifically held that collective bargaining by public

employes offends no constitutional provision and is an obvious exercise of legislative policy to foster peaceful relations between the public employers and employes and to insulate and protect the citizenry from strikes by policemen and firemen who hold critical positions.

Nor is the scope of submission to arbitrators any longer a question of doubt. The contours of an arbitrators' award under the act were described in Washington Arbitration Case, 436 Pa. 168 (1969). There it was held that:

"The essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily. We emphasize that this does not mean that a public employer may hide behind self-imposed legal restrictions. An arbitration award which deals only with proper terms and conditions of employment serves as a mandate to the legislative branch of the public employer, and if the terms of the award require affirmative action on the part of the Legislature, they must take such action, if it is within their power to do so."

The Act of 1968 expressly grants public employes the right to bargain collectively in matters concerning pension benefits. The statutory language is plain and clear. The Washington Arbitration Case teaches us that an arbitration award may require a public employer to do that which it could do voluntarily.

The Act of June 21, 1957, P. L. 378, sec. 1, as last amended on November 25, 1970, P. L. 754, sec. 1, 53 PS §39302, provides as follows:

"With the approval of council, any member of the police pension fund who is a contributor and who served in the armed forces of the United States subsequent to September 1, 1940, and who was not a member of the police pension fund prior to such military

service, shall be entitled to have full credit for each year or fraction thereof, not to exceed five years of such service upon his payment to the pension fund of an amount equal to that which he would have paid had he been a member during the period for which he desires credit, and his payment to such fund of an additional amount as the equivalent of the contributions of the city on account of such military service."

Buttressed with this statutory authority, city council would not be acting beyond the pale of the law if it voluntarily credited members of the pension fund with prior military service time. It follows much as night follows day that the arbitrators, therefore, could award the very same thing, just as they have done here.

But, argues the city, the arbitrators acted capriciously, inasmuch as they did not take into consideration the actuarial study of the police pension fund, note its unsoundness, and further contribute to its fiscal infirmities by burdening it with military service credit benefits, which would cost the city approximately $5,200 a year. The fallaciousness of this argument is apparent. Its logical extension would be that the arbitrators must study the fiscal health and resources of the City of Lebanon and only make such awards in any category as the city can reasonably afford.

This argument was given a decent and proper burial in Harney v. Russo et al., supra. There, the Borough Council of East Lansdowne argued that they could be held in contempt for not implementing the arbitration award, because the tax limitations of The Borough Code left them with insufficient funds to do so. However, the Supreme Court dismissed the argument with the observation that the Act of June 24, 1968, impliedly authorizes a court-approved millage ceiling increase to pay the arbitration award where necessary or, in the alternative, to hold that the municipal budget must

be adjusted in other places in order to provide resources for policemen's or firemen's salaries. The same rationale was employed by the Commonwealth Court in Tate, et al. v. Antosh, et al., 3 Comm. Ct. 144 (1971).

There are other inherent weaknesses in the city's argument. It would be an exercise in futility for the arbitrators to consider and test the police pension fund for actuarial soundness, because we know of no legal requirement that the fund be actuarially sound. An examination of the statutory law dealing with pension funds under General Municipal Law of June 25, 1895, P. L. 275, as amended, 53 PS §101, et seq., and The Third Class City Code of June 23, 1931, P. L. 932, as amended, 53 PS §35101, et seq., discloses that only in limited areas does the legislature refer to actuarial studies. For example, section 769 of the General Municipal Law permits boroughs, towns and townships to fix the age of members of the force at 50 years for retirement purposes, "if an actuarial study of the cost shows that such reduction in age is feasible." There is no such limiting language in The Third Class City Code dealing with credit for service time in the armed forces. The only limitation is the approval of council.

We do not know, of course, why the legislature did not specifically require actuarial soundness before council could award military service benefits. We can only speculate that the concept of actuarial soundness is illusive. A funded pension plan, to be sound, must have a principal amount sufficient to pay present and future benefit expenses as they accrue. In the area of future benefits, there is considerable uncertainty. When and if a policeman is going to retire is, of course, uncertain. He can retire before the mandatory retirement age but after an uncertain period of service. On the other hand, he may die before reaching retirement

age or before he decides to retire. The amount of expenses for pension benefits subsequent to retirement is also the subject of speculation. The benefits, of course, are paid until the individual dies. There is perhaps nothing in this world more uncertain than when a person is going to die, even though that person certainly will.

Therefore, the principal amount of a funded pension plan must depend upon estimates, statistics and experience. The validity of the amount so determined is more certain with larger groups of employes than with smaller ones. Here, we are dealing with approximately 50 or fewer people. I am certain that actuarial scientists would quarrel among themselves that there is absolute certainty that $1,500,000 is the unfunded accrued liability for the Lebanon Police Department Pension Fund. But we do not believe it is necessary to concern ourselves with this estimate, because we know of no legal requirement that the fund be actuarially sound.

Furthermore, city council has obviously recognized that actuarial soundness is not a legal requirement. We arrive at this conclusion for a number of reasons. At the hearing, we learned that the pension fund has never been actuarially sound. From the recent audits of the Police Pension Fund, we learned that the amount of the city's contributions have resulted in a substantial deficiency in accumulation of actuarial reserves. In other words, the city was at fault in contributing to the fiscal ailment of the Police Pension Fund. It is true that even if the city had made the maximum contributions permitted by law, a deficiency would still exist. However, the city fathers are aware that actuarial soundness was not a legal requirement and that the Lebanon Police Pension Fund could conceivably be depleted. By Ordinance No. 175.03,

adopted in 1963, council provided that ". . . the principal shall not be depleted in an amount less than one hundred seventy-five thousand dollars ($175,000) . . . When and if the principal is depleted to an amount herein set forth, then the benefits and pensions shall be paid out on a pro rata basis." If there is a requirement that the fund be actuarially sound, the language of this ordinance would be unnecessary.

The city's sudden concern for a fiscally sound fund is more fancied than real. The pension fund has been sailing in shallow water for more than 20 years, at least from an actuarial point of view. Yet the city has not made the maximum contribution it could have made under existing Third Class City law. Perhaps this is because the potential disaster is theoretical and not real. The fact is that the fund has increased at the rate of $22,000 per year over the last eight years while pension benefits payments have more than doubled over the same period.

Without regard to the financial health of the Police Pension Fund, the city must implement the arbitrators' award in all respects, including the military service credit benefit. All items granted by the arbitrators are within the contours of the Public Employees Collective Bargaining Act of 1968. There is no legal impediment which would prevent the city's immediate compliance. Nor is it even alleged that the city is financially unable to comply with the award. Ghostly fears of the future of the fund, if they materialize, can be dealt with much as was done in Harney v. Russo et al. and Tate et al. v. Antosh, et al., supra.

## ORDER

And now, to wit, January 12, 1973, judgment is entered for the plaintiff and against the defendants, and we do command you, the defendants, to enact legislation and do all things necessary to implement

and carry out the award of arbitrators dated September 18, 1972, or, upon your failure to comply with this mandamus, you, the named defendants, will be subjected to an attachment by this court and directed against you to bring you before the bar of this court to the end that appropriate penalties for your disregard of this court's command in this matter shall be imposed.

And herein fail not.