Commonwealth of Pennsylvania, Department of Welfare, Appellant, *v.* Garland.

Argued March 19, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Jerome H. Gerber,* Deputy Attorney General, with him *Herbert S. Levin,* Special Assistant Attorney General, and *Thomas D. McBride,* Attorney General, for appellant.

*Maxwell L. Davis,* with him *Herman S. Davis,* and *Davis & Davis,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 26, 1958:

A narrow issue is presented on this appeal: does an equity court have discretion to refuse an injunction where the Department of Welfare submits evidence that a private convalescent home is being operated without a license issued by the Department?

Florence Garland, the appellee, since 1950 has been operating a private convalescent home for the aged[1] at 2041-43 Wallace Street, Philadelphia, wherein were twenty-nine patients. On October 3, 1956 the Department of Welfare issued a license to appellee, dated February 11, 1956, to operate a private convalescent home accommodating a maximum of thirty-seven patients. On April 4, 1957 the Department advised appellee that her license, which expired February 10, 1957, was not being renewed because she had failed to maintain certain standards and facilities required by the Department. Following conferences between departmental representatives and appellee's counsel, the appellee was notified on July 10, 1957 that her license would not be renewed and she was directed to discontinue operation of the home. Appellee then instituted a mandamus action against the Department in the Dauphin County Court seeking the restoration of her license and that action is still pending. On August 29, 1957 the Department advised appellee's counsel that no further proceedings would be taken against the appellee pending the decision in the mandamus action "unless it should appear from complaint or inspection hereafter made that the well-being of patients urgently requires it."

On October 11, 1957 appellee was arrested on charges of illegal possession of dangerous narcotic drugs, the prosecution of which is still pending.

---

[1] Appellant refers to the home as a "commercial boarding home for the aged" or a "private nursing home". The distinction is that the former serves and cares for persons who are not ill or in need of nursing care (Act of September 26, 1951, P.L. 1536, §2, 37 PS §172), while the latter is a home for persons who by reason of disability are in need of care, treatment, or nursing (Act of June 12, 1931, §1, P.L. 510, as amended, 35 PS §424). In the original license and subsequent correspondence the home is called a private convalescent home, and we shall so term it.

On October 25, 1957 the Department, acting under the Act of April 6, 1951, P.L. 68, §§1-4, as amended,[2] instituted the present equity action to enjoin the appellee from operating the home. After issue joined, and a hearing, the Court below refused to issue an injunction. From such action this appeal was taken.

The Department elected, both in the Court below and in this Court, to take the position that under the Act of 1951, supra, it was entitled to the issuance of an injunction simply and solely upon proof that the appellee was operating a private convalescent home without a license. The Court below, in refusing the injunction, took the position that the Act of 1951, supra, did not give to the Department the right to an "automatic" injunction under the circumstances and that the appellee had a right to be heard "on the merits".

The Court below reviewed the state of the record on the basis of which it was requested to grant injunctive relief: "The pleadings and admissions in the record

---

[2] 71 PS §§775.1-775.4. Section 1 of the Act provides: "The Department of Welfare . . ., upon the advice of the Attorney General, may maintain an action, in the name of the Commonwealth, for an injunction or other process restraining or prohibiting any person . . . from establishing, conducting or operating, without a license, any private nursing home, private hospital, private boarding home, private mental hospital or any other private institution whenever a license to engage in such activity is required by law and such licenses are issued by the Department instituting suit, and from conducting or operating any such private institution during any period when the license to engage in such activity is revoked by the department instituting suit, whether or not an appeal on such revocation is pending, and during any period after which the licensee has violated the laws of this Commonwealth and the rules and regulations of the department issuing the license." Section 2 of this Act provides, inter alia, ". . . The court may issue a temporary restraining order or injunction under this act, but shall determine any such action on its merits as soon as possible, whether in term or in vacation. . . ."

show that defendant had a license which expired in February 1957. It was not renewed because someone in the Department of Welfare concluded that defendant was guilty of various transgressions against the law some fourteen years or more previous to February 1957; that she had in her employ a parolee whose employment had been arranged through the Pennsylvania State Parole Board; and that a former discharged employee and a former inmate of the home had written complaining letters to the Department of Welfare.

"Briefs and affidavits were submitted by the defendant to the Department of Welfare relative to these matters but she was never given a hearing nor confronted by the letter writers. Instead, her counsel met in Harrisburg with representatives of the Departments involved and considerable correspondence was had between the parties. The defendant contended that the former inmate was senile and incapable of presenting any reliable information with regard to conditions in the Home; that the former employee was discharged by defendant and made misstatements to the Department in revenge for such discharge.

"Finally, on July 10, 1957, she was ordered to cease and desist her operation of the home and on July 30, 1957, she instituted mandamus proceedings in the nature of an appeal in the Dauphin County Court alleging abuse of discretion by the Secretary of Welfare in refusing to renew her license. Pending disposition of those proceedings, she requested and was given permission to continue to operate 'unless it should appear from complaint or inspection hereafter made that the well-being of the patients urgently requires it . . .'. This permission was given on August 29, 1957, since which time, however, it does not appear that any inspections were made by the Welfare Department. It is alleged that complaints were received but they were not

offered at the hearing and defendant still awaits her day in court.

"The Department of Welfare was apparently satisfied that there was no reasonable apprehension that harm would result by allowing the defendant to operate pending disposition of the proceedings in the Dauphin County Court at least until after October 11, 1957, when the defendant was held to await the action of the grand jury of Philadelphia County upon charges of Illegal Possession of Dangerous Drugs and Illegal Possession of Narcotic Drugs. Thereafter, on October 25, 1957, the Commonwealth filed its complaint in equity invoking the provisions of the Act of 1951, supra.

"No evidence was presented in connection with the drug charges. In the pleadings the defendant denied the charges alleging that she was in proper possession of any and all drugs and averred that the same were properly prescribed by physicians and properly filled by pharmacists. We need only state that we have heard the parties in argument describe the dispute as to how many pills came from which bottle; we were singularly impressed that nothing yet appeared which required us to suspend the usual rule that a defendant is deemed innocent until proved guilty; that a determination of guilt should precede punishment.

"On this state of the record and pleadings the chancellor was confronted with only one question, viz.: was the Commonwealth entitled to an automatic injunction by simply showing that a license had not been renewed, despite the fact that defendant's right to renewal of her license was pending and undetermined in the Dauphin County Court? . . ."

Justification for the Department's position depends upon an interpretation of the Act of 1951, supra. Section 1 of that Act confers on the Department the right to seek injunctive relief against the operation of an

unlicensed private convalescent home. Section 2 of that Act sets forth the extent of judicial authority to act.[3] The latter section—vital in the disposition of this appeal—provides that the "court *may* issue a temporary restraining order or injunction . . ., but *shall* determine any such action on its merits as soon as possible, whether in term or in vacation." (Emphasis supplied)

In construing this language it is important to note that this is an appeal from the refusal of an injunction *after a final* hearing.[4] Particularly significant is the legislative use of the word "may" in the first portion of the sentence and the word "shall" in the second portion thereof. The use of the *permissive* "may"[5] in this statute clearly manifests the legislative intent that the issuance of a *"temporary* restraining order or injunction" rests in the court's discretion. The use of the

---

[3] In this connection we are mindful of that which Chief Justice MARSHALL said in *Osborn v. U.S. Bank,* 9 Wheaton 738, 866, 6 L. Ed. 204: "Judicial power, as contradistinguished from the power of the laws, has no existence. Courts are the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and when that is discerned, it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or in other words, to the will of the law."

[4] A rule to show cause why a preliminary injunction should not be granted was issued. After pleadings were completed, counsel agreed that the matter be considered as a final hearing. At the conclusion of the Department's case, defendant's motion to dismiss the complaint was allowed. Counsel then agreed to waive the entry of a decree nisi, exceptions thereto and that the decree be taken as a final decree.

[5] Although "may" can mean the same as "shall", where a statute directs the doing of a thing for the sake of justice (*Hotel Casey Co. v. Ross et al.,* 343 Pa. 573, 23 A. 2d 737; *Melnick v. Melnick et al.,* 147 Pa. Superior Ct. 564, 24 A. 2d 111) it ordinarily is employed in the permissive sense.

word "shall" clearly indicates that the legislature intended that "such action"—that is, the "action" authorized under Section 1 of the Act—*must* be determined both "as soon as possible" and "on the merits". The employment of the latter phrase completely negatives the Department's interpretation of this statutory provision. A determination "on the merits" means that the grant of an injunction depends on the rights and duties of the respective parties based on ultimate facts: it requires a consideration of the various elements which enter into or qualify the Department's right to the relief sought and of matters of substance rather than form: *General Investment Co. v. New York Central Railroad Co.*, 271 U.S. 228, 70 L. Ed. 920, 46 S. Ct. 496; *Schnarr & Co. v. Virginia-Carolina Chemical Corp.*, 118 Fla. 258, 159 So. 39; *People v. Lyman*, 65 N.Y.S. 1062, 1065; *Walling v. Miller*, 138 F. 2d 629, 631, 633; *Fairmount Aluminum Co. v. Commissioner of Internal Revenue*, 222 F. 2d 622, 625. See also: *Pacific States Savings and Loan Co. v. Hise, Bldg. & Loan Com'r.*, 146 P. 2d 427, 433, Supp. 155 P. 2d 809. The legislative mandate is clear:. the final determination of whether or not injunctive relief should be granted must depend upon the "merits", rather than on mere proof of operation of an unlicensed home.

The regulation of private convalescent homes, nursing homes and other kindred private institutions by the state is a matter of great public interest. Such regulation is particularly important for the protection of patients in such homes. The enforcement of regulatory provisions is committed to governmental agencies. In a proceeding of this nature wherein it is sought to close. a home and require, in effect, the redistribution of its patients it is highly important that the Department make out its case. The Department not only did not prove but elected not to prove that the continued

operation of this home would adversely affect the patients therein.[6] The Department relied on a quantum of proof which falls short of the legislative requirement. The statute does not declare the operation of a convalescent home without a license a nuisance per se;[7] on the contrary, it requires proof that the operation of the home without a license so affects the well-being and safety of the patients therein as to justify the drastic remedy of injunctive relief. To hold otherwise, would not only deprive defendant of any right to be heard before she is deprived of a valuable right but would be in derogation of the clear language of the statute.

Decree affirmed.[8] Appellee to pay her own costs.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

In order to cope with the abuses which have characterized the operation and conduct of private nursing homes, the legislature passed the Act of April 6, 1951, P. L. 68, 71 P.S. §775.1-775.4 (Supp.). As indicated by its title, the purpose of the act was to authorize the Commonwealth "to proceed by injunction . . . *to prohibit and restrain any unlicensed person . . . from engaging in an activity for which a license is required. . . .*" (Emphasis supplied) This legislation was not designed to empower the Commonwealth to restrain only

---

[6] Our decision on this appeal shall in no wise be construed as determinative either of the Dauphin County proceedings, the criminal charges or of the issue whether the operation of the home is beneficial to or adverse to the patients therein.

[7] *Postal Telegraph Cable Co. v. Montgomery*, 193 Ala. 234, 69 So. 428; *Dean v. State*, 151 Ga. 371, 106 S.E. 792; *State v. Maltby*, 108 Neb. 578, 188 N.W. 175; *State Dept. of Public Welfare et al. v. Bland*, 66 So. 2d 59 (Fla.).

[8] Under the Act of 1951, supra, §3, the Department cannot be taxed with the costs.

the operation of nursing homes that were nuisances, that were improperly operated, or that endangered the well-being of the inmates. The Commonwealth had those powers through the established licensing procedures. The act simply empowered the Commonwealth to restrain forthwith the operation of any nursing homes operated without a license. Although the legislature believed that immediate corrective action might be necessary in such cases, it also recognized that a defendant ought to be afforded an opportunity at the earliest possible moment to show that the Commonwealth's action was based upon a mistake, and that he, in fact, was authorized to conduct a nursing home. Hence, while it provided in section 2 of the act that a court may issue a temporary restraining order, it provided that the court "shall determine any such action on its merits as soon as possible. . . ." But the "merits" the court is authorized to determine are not whether the operation of the nursing home is a nuisance, nor whether its continued operation would adversely affect the inmates, nor whether the patients in the home require the protection of the Commonwealth. The sole issue "on the merits" is:—does the operator of the nursing home have a license? If the operator has such a license the restraining order should be dissolved. If the operator does not have such a license, an injunction should be granted. Any other interpretation of the term "merits" as used in the act would make a nullity of the statute and deprive the Commonwealth of its power to protect expeditiously the inmates of a nursing home by peremptorily restraining unlicensed operators.

The unfortunate results of the majority's decision denying the Commonwealth a remedy which the Act of 1951 was intended to provide are illustrated by the present case, for the defendant herein was arrested on

charges of illegal possession of dangerous narcotic drugs on October 11, 1957, and subsequently convicted.

I would reverse the decree of the court below and order the immediate cessation of the operation of this unlicensed nursing home.