442 A.2d 674

Leroy S. ZIMMERMAN, in his official capacity as Attorney General of the Commonwealth of Pennsylvania, Appellant,

v.

Helen B. O'BANNON, in her official capacity as Secretary of the Department of Public Welfare, Appellee.

Supreme Court of Pennsylvania.

Argued Jan. 18, 1982.

Decided March 11, 1982.

552

Joel M. Ressler, Deputy Atty. Gen., for appellant.

Myra W. Sacks, Harrisburg, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

NIX, Justice.

This appeal requires an interpretation of the Attorney General's right to stay the promulgation of a proposed rule

or regulation under Section 204(b) of the Commonwealth Attorneys Act (Act), Act of October 15, 1980, P.L. 950, No. 164, § 101, 71 P.S. § 732–101 *et seq.* The Department of Public Welfare (DPW) prepared a personal care boarding home plan and implementing regulations, and submitted them to the office of Attorney General for review pursuant to Section 204(b) of the Act. The Attorney General's office, after study, concluded that the plan and regulations authorizing a two-year's license was inconsistent with the Public Welfare Code, Act of June 13, 1967, P.L. 31, No. 21, 62 P.S. § 211 added by Act of July 10, 1980, P.L. 493, No. 105, (Supp.1981–82), and therefore was without proper statutory authority. This fact was communicated to DPW. Despite the disapproval of the Attorney General, DPW had the regulations published in the Pennsylvania Bulletin whereupon they immediately became effective. The Attorney General filed a petition for review and application for stay with the Commonwealth Court. The Commonwealth Court denied the application for stay and it is that judgment that is presently before us for consideration.

The controversy in this appeal focuses upon the proper standard for the issuance of a requested stay of implementation of a regulation which has been deemed improper by the Attorney General. Section 204(b) provides:

Commonwealth agencies; rules and regulations.

The Attorney General shall review for form and legality, all proposed rules and regulations of Commonwealth agencies before they are deposited with the Legislative Reference Bureau as required by section 207 of the act of July 31, 1968 (P.L. 769, No. 240), known as the "Commonwealth Documents Law." If the Attorney General determines that a rule or regulation is in improper form, not statutorily authorized or unconstitutional, he shall notify in writing within 30 days after submission the agency affected, the Office of General Counsel, and the General Assembly through the offices of the Secretary of the Senate and the Chief Clerk of the House of Representatives of the reasons for the determination. The Common-

wealth agency may revise a rule or regulation to meet the objections of the Attorney General and submit the revised version for his review. Should the agency disagree with the objection, it may promulgate the rule or regulation with or without revisions and shall publish with it a copy of the Attorney General's objections. The Attorney General may appeal the decision of the agency by filing a petition for review with the Commonwealth Court in such manner as is provided for appeals from final orders of government agencies pursuant to 42 Pa.C.S. § 763 (relating to direct appeals from government agencies) and may include in the petition a request for a stay or supersedeas of the implementation of the rule or regulation which upon a proper showing shall be granted. If a rule or regulation has been submitted to the Attorney General and he has not approved it or objected to it within 30 days after submission, the rule or regulation shall be deemed to have been approved.

This section obviously attempts to accommodate the independence of the agency and the role of the Attorney General as the attorney for the Commonwealth. It mandates first that the Attorney General must review for form and legality all rules and regulations sought to be proposed by Commonwealth agencies. Second, it places upon the Attorney General the duty of notifying the agency in question if, in the judgment of the Attorney General, the proposed regulation or rule is either without statutory authority, violative of the Constitution or not in proper form. Third, this provision provides a new procedure in this Commonwealth whereby the Attorney General must also communicate his objection to the office of General Counsel and the General Assembly. This third requirement is designed to assure that other concerned units of government are alerted of the potential problem.[1] Fourth, the agency is provided the discretion of

1. This new mechanism calls to the attention of the General Assembly that one of its statutes is possibly being implemented in a manner inconsistent with the intended legislative mandate. This facilitates possible legislative response if the General Assembly deems it necessary to further clarify its intent.

revising the rule or regulation to satisfy the objection or proceeding despite the objection. The fifth provision is the one we are now called upon to interpret. It relates to the right of the Attorney General to interrupt the promulgation of the rule or regulation prior to a judicial determination of the validity of the objection.

It is the basic position of DPW that the right for stay is governed by the normal rules of appellate procedure for such a request. Under these rules, the court must exercise its discretion in making a determination as to whether the request for stay is warranted.

An analysis of DPW's argument reveals its fallacies. DPW seeks to latch upon the phrase "upon a proper showing" as evidencing a legislative intention to confer judicial discretion in determining whether the Attorney General's request for stay should be granted. DPW concedes that section 204(b) authorizes the Attorney General to elect to trigger a judicial determination and that he may include a request for a stay of the implementation of the challenged rule or regulation. DPW then attempts to engraft the limitation that the stay will only be granted "if pleaded and proved in accordance with the applicable rules of appellate procedure and law." [See appellee's brief, pg. 6.] This implied limitation is supposed to flow from the legislative use of the phrase "upon a proper showing."

The initial error in this analysis is the effort to equate as synonymous the phrase "upon a proper showing" with the conferral of judicial discretion. The phrase "upon a proper showing" is equally compatible with the view that such a showing requires the Attorney General merely to establish that he has satisfied the procedural prerequisites dictated by Section 204(b).

The interpretation that the phrase, "upon a proper showing" requires only the proof of the procedural prerequisites can be reached by adhering to the recognized basic rules for ascertaining legislative intent. In contrast, the interpretation urged by DPW requires us to ignore and violate a number of the fundamental rules of statutory

construction. It is the duty of this Court to ascertain the intention of the General Assembly; that every statute shall be construed, if possible, to give effect to all of its provisions; that where the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit; and that the General Assembly does not intend a result that is absurd or unreasonable. Statutory Construction Act, Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1901 *et seq.*

Following DPW's approach, we are not only called upon to infer the existence of judicial discretion in the judgment of whether a stay should be allowed, but also we would be called upon to define the nature and extent of that discretion. Illustrative of the difficulty encountered with the acceptance of such a strained interpretation is DPW's extensive discussion as to what factors should be considered and what standards should be employed in the exercise of that discretion. The fact that these questions were not addressed by the legislature argues strongly that these considerations were not intended.

If DPW is correct in arguing that the right to a stay conferred under Section 204(b) is governed by the existing rules of appellate procedure and law, no purpose was served by specifically referring to the Attorney General's right to request a stay in this section. Such an interpretation would ignore the precept that the General Assembly intends to give effect to all of the words in a statute, Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1921(a); *Daly v. Hemphill*, 411 Pa. 263, 191 A.2d 835 (1963); *Commonwealth v. McHugh*, 406 Pa. 566, 178 A.2d 556 (1962); *Sterling v. Philadelphia*, 378 Pa. 538, 106 A.2d 793 (1954), and does not intend a redundancy. If a unique type discretion was intended (as DPW argues alternatively) we would then have to conclude that the legislature failed in its responsibility to articulate that unique standard.

Moreover, acceptance of DPW's interpretation requires us to ignore the mandatory connotation usually attributed to the word "shall" which immediately follows the phrase that

DPW focuses upon. *Amalgamated Transit Union v. Port Authority of Allegheny County,* 417 Pa. 299, 208 A.2d 271 (1965); *Commonwealth of Pa., Dept. of Welfare v. Garland,* 393 Pa. 45, 142 A.2d 14 (1958); *National Transit Co. v. Boardman,* 328 Pa. 450, 197 A. 239 (1938); *Matter of Columbia Borough,* 24 Pa.Commonwealth Ct. 190, 354 A.2d 277 (1976). If the intent of the phrase "upon a proper showing" was to confer the judicial discretion urged by DPW, the traditional way to have ended that clause would have been with the use of "may," reinforcing the existence of that discretion. *Commonwealth of Pa., Dept. of Welfare v. Garland, supra.* The use of the word "shall" is consistent with the interpretation that no judicial discretion was conferred and that the grant of the stay was mandated once the procedural prerequisites had been established.

In this case we have more than the force of the legislative presumption to demonstrate the intention of the legislature in its choice of the word "shall" in the drafting of this particular section. The legislature, in section 204(b), uses the word "shall" five times and the word "may" four times. Excluding the use of the word "shall" that is presently questioned, it is clear from the other instances where the word was used in this subsection that the General Assembly intended a mandatory connotation. This fact is further emphasized by the consistent use of the word "may" where the action was intended to be permissive.[2]

2. Section 204(b):
    Commonwealth agencies; rules and regulations.
    The Attorney General *shall* review for form and legality, all proposed rules and regulations of Commonwealth agencies before they are deposited with the Legislative Reference Bureau as required by section 207 of the act of July 31, 1968 (P.L. 769, No. 240), known as the "Commonwealth Documents Law." If the Attorney General determines that a rule or regulation is in improper form, not statutorily authorized or unconstitutional, he *shall* notify in writing within 30 days after submission the agency affected, the Office of General Counsel, and the General Assembly through the offices of the Secretary of the Senate and the Chief Clerk of the House of Representatives of the reasons for the determination. The Commonwealth agency *may* revise a rule or regulation to meet the objections of the Attorney General and submit the revised version for his review. Should the agency disagree with the

■ "Shall" is first used to describe the Attorney General's obligation to review for form and legality all proposed rules and regulations. There can be no question that this obligation represents a mandatory responsibility. The section again uses "shall" to require the notification, within 30 days after the submission that the rule or regulation was not in proper form or otherwise defective. "Shall" is also used directing the agency to publish the objection in the event that the agency elects to ignore the objection of the Attorney General. "Shall" is again used to direct, that if within 30 days after the submission the Attorney General has failed to act, the regulation will be deemed approved. In these four instances there can be no serious question that the General Assembly was acutely aware of the mandatory force of the word "shall."

■ In contrast, each of the four instances where the word "may" was employed clearly related to permissive acts. The Commonwealth agency "may" revise the regulation in accordance with the Attorney General's objection, but is not required to do so. The agency "may" promulgate the rule with or without the suggested revisions. The Attorney General "may" appeal the decision of the agency but, obviously, is not mandated to do so. And finally, the Attorney General "may" request a stay or supersedeas but, obviously, is not required to do so. With such a scrupulous use of the terms "may" and "shall," *in the very subsection in question,* it is clear that the inclusion of "shall" when referring to the

objection, it *may* promulgate the rule or regulation with or without revisions and *shall* publish with it a copy of the Attorney General's objections. The Attorney General *may* appeal the decision of the agency by filing a petition for review with the Commonwealth Court in such manner as is provided for appeals from final orders of government agencies pursuant to 42 Pa.C.S. § 763 (relating to direct appeals from government agencies) and *may* include in the petition a request for a stay or supersedeas of the implementation of the rule or regulation which upon a proper showing *shall* be granted. If a rule or regulation has been submitted to the Attorney General and he has not approved it or objected to it within 30 days after submission, the rule or regulation *shall* be deemed to have been approved. [Emphasis added.]

obligation of the court to grant the requested stay was intended to convey the lack of the court's discretion in that decision.

The scheme of the entire section 204 further reinforces the view that judicial discretion was not conferred upon the judiciary. Under subsection (a)[3] the Governor and the head of all Commonwealth agencies were given the right to seek legal advice from the Attorney General. Where this advice is not accepted, the Governor or agency may seek a declaratory judgment in the Commonwealth Court. However, where the advice was sought by the Governor or agency, it remains binding until the Commonwealth Court issues a

**3.** Section 204(a) reads as follows:
Legal advice.

(1) Upon the request of the Governor or the head of any Commonwealth agency, the Attorney General shall furnish legal advice concerning any matter or issue arising in connection with the exercise of the official powers or the performance of the official duties of the Governor or agency. The Governor may request the advice of the Attorney General concerning the constitutionality of legislation presented to him for approval in order to aid him in the exercise of his approval and veto powers and the advice, if given, shall not be binding upon the Governor. In all other cases the advice when received shall be followed and, when followed, the recipient shall not in any way be liable for doing so, upon his official bond or otherwise.

(2) If the Governor or the head of any Commonwealth agency disagrees with the legal advice rendered by the Attorney General, the Governor or the head of the Commonwealth agency may seek a declaratory judgment in the Commonwealth Court pursuant to 42 Pa.C.S. Ch. 75 Subch. C (relating to declaratory judgments). The legal advice of the Attorney General shall be binding until the Commonwealth Court issues a final order on the petition requesting the declaratory judgment.

(3) It shall be the duty of the Attorney General to uphold and defend the constitutionality of all statutes so as to prevent their suspension or abrogation in the absence of a controlling decision by a court of competent jurisdiction.

(4) Before the Attorney General shall render any opinion interpreting any appropriation act, or any act authorizing the expenditure of money, he shall notify the Departments of the Auditor General, the State Treasury and the Secretary of Budget and Administration of the question upon which his opinion has been requested, and afford to these departments an opportunity to present any views which they may have upon such question.

final order on the petition requesting the declaratory judgment.[4]

In contradistinction, in subsection (b) the legislature requires the Attorney General, on his own, to review for form and legality all proposed rules and regulations of Commonwealth agencies. Since the review was not initiated by the agency as in the case of subsection (a), the Attorney General's opinion is not *initially* binding. However, the Attorney General is vested with the discretion of triggering a judicial determination as to the validity of his position *and is also given the right to halt the promulgation of the regulation or rule pending a final legal determination of that controversy.*

Under subsection (c),[5] the Attorney General is vested with the responsibility of representing the Commonwealth and all Commonwealth agencies. To accept the view urged by DPW would be inconsistent with the obligation of represen-

---

4. The advice given by the Attorney General to the Governor concerning the constitutionality of legislation for the purpose of aiding the Governor in the exercise of his approval and veto powers is not binding.

5. Section 204(c) reads as follows:
   Civil litigation; collection of debts.—The Attorney General shall represent the Commonwealth and all Commonwealth agencies and upon request, the Departments of Auditor General and State Treasury and the Public Utility Commission in any action brought by or against the Commonwealth or its agencies, and may intervene in any other action, including those involving charitable bequests and trusts or the constitutionality of any statute. The Attorney General shall represent the Commonwealth and its citizens in any action brought for violation of the antitrust laws of the United States and the Commonwealth. The Attorney General shall collect, by suit or otherwise, all debts, taxes and accounts due the Commonwealth which shall be referred to and placed with the Attorney General for collection by any Commonwealth agency; the Attorney General shall keep a proper docket or dockets, duly indexed, of all such claims, showing whether they are in litigation and their nature and condition. The Attorney General may, upon determining that it is more efficient or otherwise is in the best interest of the Commonwealth, authorize the General Counsel or the counsel for an independent agency to initiate, conduct or defend any particular litigation or category of litigation in his stead. The Attorney General shall approve all settlements over such maximum amounts as he shall determine arising out of claims brought against the Commonwealth pursuant to 42 Pa.C.S. § 5110.

tation imposed under subsection (c). It is conceded that subsection (b) intended to provide a mechanism whereby proposed rules and regulations of Commonwealth agencies should be reviewed by the Attorney General and that he is given the right to have a court determination where his judgment is questioned. These powers are consistent with his role as attorney for the agencies. It is also consistent with this attorney-client relationship that the Attorney General be empowered in his discretion to halt the promulgation of those challenged rules or regulations until the final court ruling is obtained. If the Attorney General is not vested with this discretion, anomalous results would follow.

The Attorney General is under an obligation to review and to express his objection. If the stay is not granted and ultimately the Commonwealth Court agrees with the Attorney General's view that the rule or regulation was in fact improper, that finding may provide the predicate for a lawsuit against the agency by persons adversely affected by the rule or regulation. In such case, the Attorney General would be in the position of establishing the liability and creating the vulnerability of his own client. Additionally, the Attorney General, as counsel not only for the agency in question but also for the Commonwealth, would be powerless to anticipate and to prevent the possibility of a lawsuit against those whom he is mandated to represent.

We are therefore satisfied that the legislature intended to confer upon the Attorney General the right to a stay or supersedeas upon a showing of compliance with the procedural requirements of section 204(b). Here, it is conceded that the procedural prerequisites were met. Consequently, we reverse the order of the Commonwealth Court and grant a stay pending final resolution by the Commonwealth Court of the Attorney General's petition for review.

It is so ordered.

LARSEN, J., filed a dissenting opinion joined by FLAHERTY and McDERMOTT, JJ.

LARSEN, Justice, dissenting.

Despite protestations to the contrary, the majority effectively excises the phrase "upon a proper showing" from Section 204(b) of the Commonwealth Attorneys Act, 71 P.S. § 732–204(b) (supp. pamphlet 1981–82). This is especially surprising in light of the majority's citation of, and alleged reliance upon, the rule of construction that every statute shall be construed, if possible, to give effect to *all* of its provisions. Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1922(2) (supp. pamphlet 1981–82).

The critical passage of Section 204(b) reads:

The Attorney General may appeal the decision of the agency by filing a petition for review with the Commonwealth Court *in such manner as is provided for appeals from final orders of government agencies pursuant to 42 Pa.C.S. § 763* (relating to direct appeals from government agencies) and may include in the petition a request for a stay or supersedeas of the implementation of the rule or regulation which *upon a proper showing* shall be granted. (emphasis added).

The majority holds that "such a [proper] showing requires the Attorney General merely to establish that he has satisfied the procedural prerequisites dictated by Section 204(b)." (At 676). Just exactly what are "the procedural prerequisites" dictated by Section 204(b)"?

Most assuredly, these "procedural prerequisites" include filing the petition for review "in such manner as is provided for appeals from final orders of government agencies pursuant to 42 Pa.C.S. § 763" which "may include a *request* for a stay." This section of the Judicial Code confers jurisdiction in the instant matter to the Commonwealth Court. Accordingly, the "manner as is provided for appeals", including a *request* for a stay, consists of the rules of appellate practice and procedure governing appeals to the Commonwealth Court from final determinations of government agencies. Thus, the Attorney General's petition for review and request for a stay must comply with the requirements of Chapter 15 of the Pennsylvania Rules of Appellate Procedure (Judicial

Review of Governmental Determinations) and Chapter 17 (Effect of Appeals; Supersedeas and Stays), respectively.

Pa.R.A.P. 1781 delineates the procedural prerequisites to the grant of a stay pending action on a petition for review:

(a) Application to government *unit. Application for a stay* ... of an order or other determination of any government unit pending review in an appellate court on petition for review *shall ordinarily be made in the first instance to the government unit.*

(b) Contents of application for stay or supersedeas. *An application for stay* ... of an order or other determination of a government unit, ... may be made to the appellate court or to a judge thereof, but *the application shall show that application to the government unit for the relief sought is not practicable, or that application has been made to the government unit and denied, with the reasons given by it for the denial, or that the action of the government unit did not afford the relief which the applicant had requested. The application shall also show the reasons for the relief requested and the facts relied upon,* and if the facts are subject to dispute the application shall be supported by sworn or verified statements or copies thereof. With the application shall be filed such parts, if any, of the record as are relevant to the relief sought.

(c) Notice and action by court. Upon such notice to the government unit as is required by Rule 123 (applications for relief) *the appellate court,* or a judge thereof, *may grant an order of stay* ... upon such terms and conditions, including the filing of security, as the court or the judge thereof may prescribe....

It is apparent that this rule contemplates application for a stay to be brought first to the government unit and requires the application to show either why such procedure would not be practicable, that the application was denied, or the reasons why the action by the government unit on the application for stay did not afford the requested relief. The Attorney General's application for stay in the instant case fails to make any of these showings. Moreover, the applica-

tion makes no showing of the "reasons for the relief requested and the facts relied upon", other than the bare legal assertion that the Commonwealth Attorney's Act mandates granting the stay merely upon the Attorney General's application. No facts are set forth in the Attorney General's application that would justify the court's granting the stay pursuant to the discretion vested in it under Pa.R.A.P. 1781(c) ("the appellate court . . . may grant an order of stay . . . upon such terms and conditions . . . as the court or judge thereof may prescribe.")

The majority interpretation would reduce the "proper showing" merely to the demonstration that the Attorney General reviewed the rule or regulation for legality and notified the appropriate parties. Such an interpretation totally ignores the requirement that the petition for review, including the request for stay, must be in the manner provided for appeals from final orders of government agencies. The majority voices concern with the "difficulty" of defining the nature and extent of that discretion since these questions were not specifically addressed in Section 204(b). However, this "difficulty" is no more or less than in *any* case involving an application for a stay under Pa.R.A.P. 1781. Accordingly, in order to give effect to all of the provisions of Section 204(b), I would affirm the denial by the Commonwealth Court of the Attorney General's application for a stay.

I am also unpersuaded by the majority's discussion of "shall" versus "may". It is quite clear that "shall be granted" is conditioned upon the Attorney General's "proper showing". Indeed other "shall" provisions of Section 204(b) are similarly conditional. For example, "[i]f the Attorney General determines that a rule or regulation is in improper form, not statutorily authorized or unconstitutional, he *shall notify* . . . the agency affected, the Office of General Counsel, and the General Assembly. . . ." It would be absurd to argue that the use of "shall notify" *requires* the Attorney General to make a determination that the rule or regulation was in improper form, not statutorily authorized or unconsti-

tutional, yet the logic of the majority would suggest such an interpretation. *If* the Attorney General makes a proper showing, *then* the court shall grant his request for a stay—even though "shall" is mandatory, the condition must first be satisfied. Appellee's interpretation does not, therefore, as the majority asserts, require "us to ignore the mandatory connotation usually attributed to the word 'shall'." (At 677).

Finally, the purpose of the provision in question is no mystery. The majority maintains that unless its interpretation is correct, the Attorney General's right to request a stay serves no purpose. The purpose is obvious—it confers *authority* upon the Attorney General to petition for review and request a stay or supersedeas where the governmental unit ignores his advice. Without such an authorization, the Attorney General would have no standing to pursue such review.

FLAHERTY and McDERMOTT, JJ., join in this dissenting opinion.