**Sina MOZZAFARI, Petitioner,**

v.

**Johnny J. BUTLER, Secretary of Labor for the Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 11, 2000.

Decided Oct. 12, 2000.

James G. Morgan, Jr., Harrisburg, for petitioner.

Karen L. Galli, Philadelphia, for respondent.

BEFORE: SMITH, Judge, FLAHERTY, Judge (P.), McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

Sina Mozzafari (Petitioner) petitions for review of the final decision and order of

Johnny Butler, Secretary of Labor and Industry for the Commonwealth of Pennsylvania (Secretary Butler), affirming the proposed order of a hearing examiner suspending Petitioner's elevator inspection commission for a period of six months. We now affirm.

Petitioner is a Pennsylvania Department of Labor and Industry (Department) commissioned elevator inspector, holding Commission No. 1726. On April 16, 1997, Petitioner conducted an inspection of a passenger elevator located at the Green Street Elementary School in Reading, Pennsylvania.[1] In a report submitted to the Department, Petitioner noted no deficiencies in that inspection. On August 29, 1997, in response to a request from the school's elevator maintenance contractor, the Department conducted an inspection of that same elevator and found an extreme rusting condition on the starter channel and the cylinder assembly. Due to the imminent safety hazard presented, the Department sealed the elevator out of service.

The Department then began to review a number of Petitioner's more recent elevator inspections. On September 30, 1997, Petitioner reported that he had inspected fourteen elevators at St. Joseph's University (St.Joe's) located in Philadelphia, Pennsylvania. Petitioner noted only one deficiency on these elevators. However, twenty days later, the Department re-inspected these same elevators and noted sixty deficiencies. The Department again sealed one elevator out of service due to an imminent safety hazard. During the re-inspections, the Department determined that Petitioner did not have access to the machine rooms for any of his elevator inspections, nor did he have access to the seven dormitory buildings at St. Joe's for which he had issued elevator inspection certificates.

On October 7–9, 1997, Petitioner reported that he had inspected forty-three elevators and lifting devices at Lehigh University in Bethlehem, Pennsylvania. Petitioner submitted reports to the Department indicating that he found no deficiencies in any of the elevators or devices. Twenty days later, the Department inspected sixteen of these same elevators and devices and found 101 deficiencies. Once again, one elevator was sealed out of service due to an imminent safety hazard. Due to the condition of the elevators and devices inspected and the numerous deficiencies, the Department determined that Petitioner could not have properly inspected the same.

On January 12, 1998, the Department, through the Elevator Division of its Bureau of Occupational and Industrial Safety (Bureau), issued an order to show cause why Petitioner's elevator inspection commission should not be revoked for incomplete and unsatisfactory elevator inspections. The order to show cause detailed Petitioner's inspections and findings, or lack thereof, as well as the Department's re-inspections and findings. Additionally, the Bureau attached copies of Petitioner's inspection reports and the Department's re-inspection reports to the order to show cause. Petitioner filed an answer with new matter essentially denying the Bureau's allegations, noting the difference in dates between his inspections and the Department's inspections and requesting an opportunity to review the Department's inspection reports.

Secretary Butler thereafter appointed a hearing examiner and the case proceeded with several hearings.[2] At the hearings, the Bureau presented into evidence Petitioner's inspection reports and the Department's re-inspection reports. The Bureau also presented the testimony of the Department's inspectors who conducted the re-inspections. Thomas Kopec, a commis-

---

1. Petitioner had inspected the same elevator on three prior occasions in 1996.

2. Hearings in this matter were held on August 25, 1998, October 6, 1998, and March 24, 1999.

sioned state elevator inspector since 1992, performed the re-inspection at the Green Street Elementary School in Reading. Mr. Kopec testified regarding the extreme rusting condition and deterioration that he observed on the starter channel and the cylinder assembly of the elevator at this school. Mr. Kopec indicated that he then sealed this elevator out of service, with the permission of the facilities manager for the Reading School District, as a result of the unsafe rusting condition. Mr. Kopec also indicated that the rusting condition was not such that it could have occurred since the last inspection, but had to be progressing with years of service.

The Bureau also presented the testimony of Joseph Paul Marchioni, Jr., a central district supervisor for the Department and a plans examiner for the Bureau's Elevator Division. Mr. Marchioni was Mr. Kopec's supervisor. Mr. Marchioni visited the Green Street Elementary School and also observed the severe corrosion on the underside of the elevator. Mr. Marchioni confirmed that Department records show that Petitioner had inspected this elevator on April 16, 1997, and found no deficiencies. Mr. Marchioni indicated that the Bureau thereafter decided to conduct re-inspections of Petitioner's more recent inspections.

Mr. Marchioni also indicated that he participated in the re-inspection of fourteen elevators at St. Joe's in Philadelphia, where Petitioner noted only one deficiency regarding car leveling. Mr. Marchioni noted numerous deficiencies in these elevators, including an unlocked machine room door, a lack of dielectrical matting in front of a controller, missing electrical covers in the pit, machine room and on the car top, missing high voltage warning labels, a missing front panel controller cover, missing sight guards, improperly installed crosby clamps on hoist ropes and improperly functioning car top inspection controls.

Further, the Bureau presented the testimony of Anthony Kaiser, III, another commissioned state elevator inspector. Mr. Kaiser performed the re-inspection at Lehigh University in Bethlehem. Mr. Kaiser did not re-inspect all forty-three elevators and lifting devices. Instead, Mr. Kaiser only inspected fourteen elevators and two lifting devices. Mr. Kaiser indicated that he found numerous deficiencies, including improperly numbered mainline disconnect switches, leaks in the hydraulic packing, a lack of dielectric floor matting in machine rooms, missing plate fastenings, loose handrails, an unlocked landing door on a wheelchair lift, diameter loss and breaks on hoisting cables and a governor cable, loose sight guards, improperly functioning car doors and a missing safety astragal on a car door.

At the final hearing in this matter, Petitioner testified on his own behalf. With respect to the elevator at the Green Street Elementary School in Reading, Petitioner admitted that he had made a mistake and that he should have seen the corrosion. With respect to St. Joe's, Petitioner stated that he had placed a call from a dormitory on campus and, thus, had to have access to such a building to do so. However, on cross-examination, Petitioner indicated that the call could have been placed from another building on campus, i.e., the Language Center, and not from a dormitory.

Following this final hearing, the parties submitted briefs and proposed findings. Thereafter, the hearing examiner issued his proposed report suspending Petitioner's elevator inspection commission for a period of six months. In the course of his decision, the hearing examiner made the following, relevant findings of fact:

15. The Department's inspection revealed 60 deficiencies some of which could have occurred during the twenty days between inspections but not all.

16. Missing dust covers, sight guards and improperly placed crosby clamps are things that are part of an elevator which should be noticed during an inspection.

17. There were unsafe conditions such as a missing door operator cover that exposed hot relays and on elevator # 14, which was put out of service, the doors could be opened without the car being there.

. . .

20. The Department's inspectors cited 59 more.

. . .

26. The Department found approximately 101 deficiencies on October 29, 1997.

27. Again some were minor infractions like car numbers and house keeping.

. . .

33. Most of the major deficiencies clearly existed for longer than the 20 days between inspections.

(Hearing Examiner's Proposed Report, Findings of Fact Nos. 15–17, 20, 26–27, 33, R.R. at 531a–532a).

In the discussion section of his report, the hearing examiner noted that the Department's regulations address cables. However, the hearing examiner also noted that the regulations are not necessary here, as "commonsense will serve."[3] (R.R. at 532a). The hearing examiner indicated that Petitioner's offenses were "mainly of omission rather than commission," that Petitioner "failed to inspect rather than make mistakes in the act of inspecting" and that Petitioner "is lazy rather than ignorant." (R.R. at 533a).

The hearing examiner indicated that Petitioner's actions placed his employer and the general public at risk by neglecting safety violations. Petitioner thereafter filed exceptions to the hearing examiner's report with Secretary Butler. Secretary Butler then issued his final decision and order denying Petitioner's exceptions and affirming the hearing examiner's proposed order suspending Petitioner's elevator inspection commission for a period of six months.

On appeal to this Court,[4] Petitioner argues that Secretary Butler erred in affirming the proposed order of the hearing examiner, as the hearing examiner's findings of fact were not supported by substantial evidence. We disagree.

At the hearings before the hearing examiner, the Bureau presented into evidence Petitioner's inspection reports and the Department's re-inspection reports. The Bureau also presented the testimony of the Department's inspectors who conducted the re-inspections, i.e., Mr. Kopec, Mr. Marchioni and Mr. Kaiser. Mr. Kopec and Mr. Marchioni both had an opportunity to observe the elevator at the Green Street Elementary School in Reading and both individuals noted the extreme rusting condition and deterioration on the elevator's starter channel and cylinder assembly, despite a finding of no deficiencies by Petitioner during an inspection four months prior on April 16, 1997.[5] (R.R. at 76a–77a, 142a, 160a).

Mr. Marchioni also participated in the re-inspection of fourteen elevators at St.

---

3. Additionally, the hearing examiner noted that the Department lacks a written and published policy regarding the kinds and character of offenses that would mandate an initial suspension for a certain duration, as well as second or subsequent offenses and suspensions.

4. An adjudication of an agency should be affirmed unless constitutional rights are violated, an error of law is committed, procedural rules are violated, or necessary findings of fact are not supported by substantial evidence. See Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; Estate of McGovern v. State Employees' Retirement Board, 512 Pa. 377, 517 A.2d 523 (1986).

5. Mr. Kopec conducted the re-inspection of the elevator at the Green Street Elementary School on August 29, 1997. (R.R. at 75a). Approximately two weeks later, on September 9, 1997, Mr. Marchioni, Mr. Kopec's supervisor, visited the school and observed for himself the condition of the elevator.

Joe's in Philadelphia, where Petitioner noted only one deficiency regarding car leveling. (R.R. at 164a–165a). Mr. Marchioni noted numerous deficiencies in these elevators.[6] (R.R. at 164a, 168a). Additionally, during the re-inspection at St. Joe's, Mr. Marchioni discovered that Petitioner did not have access to elevators in seven dormitory buildings or the machine rooms of the elevators, as these areas were secured and required either an escort with keys or a call to security. (R.R. at 181a–183a). Mr. Marchioni indicated that Petitioner failed to utilize either option. (R.R. at 184a).

Mr. Kaiser performed the re-inspection at Lehigh University in Bethlehem, inspecting fourteen elevators and two lifting devices.[7] (R.R. at 329a, 332a). Similar to Mr. Marchioni at St. Joe's, Mr. Kaiser noted numerous deficiencies during his re-inspection, including improperly numbered mainline disconnect switches, leaks in the hydraulic packing, a lack of dielectric floor matting in machine rooms, missing plate fastenings, loose handrails, an unlocked landing door on a wheelchair lift, diameter loss and breaks on hoisting cables and a governor cable, loose sight guards, improperly functioning car doors and a missing safety astragal on a car door. (R.R. at 335a–345a).

The testimony of Mr. Kopec, Mr. Marchioni and Mr. Kaiser, coupled with their re-inspection reports and the lack of any deficiency findings on Petitioner's own reports, constitutes substantial evidence in support of the hearing examiner's findings of fact.

Next, Petitioner argues that Secretary Butler erred in affirming the proposed order of the hearing examiner, as his due process rights were violated by virtue of a lack of regulations governing discipline with any specificity or standards which were reasonable or available to Petitioner. In the context of this argument, Petitioner also argues that a six-month suspension was indiscriminately harsh, groundless and excessive. Again, we disagree.

We begin with the latter argument. Section 4 of what is commonly referred to as the Elevator Law,[8] addresses the suspension and/or revocation of an elevator inspector's commission. Specifically, this Section provides, in pertinent part, that "[t]he Secretary of Labor and Industry may suspend any commission for due cause, but no commission may be revoked until the inspector has been granted a hearing." Hence, Secretary Butler is afforded great discretion when dealing with the suspension of Petitioner's elevator inspector commission.[9] Based upon the facts as found by the hearing examiner and adopted by Secretary Butler, as well as our review of the evidence of record, we cannot say that Petitioner's six-month sus-

6. These deficiencies included an unlocked machine room door, a lack of dielectrical matting in front of a controller, missing electrical covers in the pit, machine room and on the car top, missing high voltage warning labels, a missing front panel controller cover, missing sight guards, improperly installed crosby clamps on hoist ropes and improperly functioning car top inspection controls. (R.R. at 168a–179a).

7. Lehigh University actually maintained forty-three elevators and lifting devices on campus.

8. Act of May 2, 1929, P.L. 1518, *as amended*, 35 P.S. § 1344. We note that the General Assembly has taken steps to repeal this Section, as well as all other sections of the Elevator Law, "effective 90 days following publication of notice in the Pennsylvania Bulletin that the regulations required by the act have been finally adopted." *See* Sections 1102(a) and 1103(2) of the Act of November 10, 1999, P.L. 491, 35 P.S. §§ 7210.1102(a), 7210.1103(2). To this date, however, the Department has neither submitted nor adopted these regulations; hence, the Elevator Law remains in effect.

9. Both our Pennsylvania Supreme Court and this Court have attributed a permissive or discretionary connotation to the legislature's use of the word "may" in a statute. *See Zimmerman v. O'Bannon*, 497 Pa. 551, 442 A.2d 674 (1982); *O'Neill v. Borough of Yardley*, 129 Pa.Cmwlth. 270, 565 A.2d 502 (1989), *petition for allowance of appeal denied*, 526 Pa. 643, 584 A.2d 324 (1990).

pension was indiscriminately harsh, groundless or excessive.

■ With respect to Petitioner's due process argument, the Department's regulations provide that "[d]uring inspections all safety appliances shall be thoroughly examined and all violations reported." 34 Pa.Code § 7.15(a)(4). The Department's regulations go on to describe the various specifications required for all types of elevators and lifting devices. Additionally, the Department's regulations provide that "inspectors shall file...copies of all inspection reports" with the Department. 34 Pa.Code § 7.15(b). The inspection forms utilized by inspectors and prepared by the Department provide a detailed list of possible violations on the back of the forms.

In this case, there is no dispute that Petitioner utilized these inspection forms when he conducted his inspections and submitted his reports to the Department. Hence, Petitioner was aware of the standards involved in conducting an inspection and those standards were readily available to him.[10] Moreover, as indicated above, Section 4 of the Elevator Law permits the Secretary of Labor and Industry to suspend an elevator commission for due cause. Neither the Department's regulations nor the Elevator Law statute require the Department to set up a system of progressive discipline.

Accordingly, the order of Secretary Butler is affirmed.

### *ORDER*

AND NOW, this 12th day of October, 2000, the order of Johnny Butler, Secretary of Labor and Industry for the Commonwealth of Pennsylvania, is hereby affirmed.

■

---

10. We note, as did the hearing examiner, that many *of the* violations that Petitioner failed to identify were matters of common sense and not matters of regulation, e.g., broken strands on elevator cables and water in the pit of an elevator shaft near electrical wiring.