JENNISON FAMILY LIMITED PARTNERSHIP and Thomas A. Jennison, Appellants,

v.

MONTOUR SCHOOL DISTRICT.

Commonwealth Court of Pennsylvania.

Argued May 6, 2002.

Decided July 19, 2002.

---

Robert L. Monks, Pittsburgh, for appellant.

Ira Weiss, Pittsburgh, for appellee.

Before McGINLEY, Judge, COHN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge COHN.

Jennison Family Limited Partnership/Thomas A. Jennison (Taxpayer) appeals from an order of the Court of Common Pleas of Allegheny County that denied his cross motion for summary judgment and granted that of the Montour School District (School District). We affirm.

The case was submitted to the court below on stipulated facts. On February 9, 1998, Robinson Township designated certain real property as a "deteriorated area" under the Local Economic Revitalization Tax Assistance Act (LERTA).[1] Within that designated area was property owned by Penn Center West. The property at issue here, which is now owned by Taxpayer, was NOT in that area. Once a LERTA designation is made by a municipality (here Robinson Township) the local taxing authority (in this case the School District) "may by ordinance or resolution exempt from real property taxation the assessed valuation of improvements to deteriorated properties and the assessed valuation of new construction...." Section 4(a) of LERTA, 72 P.S. § 4725(a). The School District authorized exemptions, although its ordinance pre-dated the Robinson Township action, an issue not challenged herein.

On March 8, 1999, Robinson Township enacted another ordinance and designated another area, including the property that is the subject of this appeal, as deteriorated. On February 18, 2000, Taxpayer purchased the subject property within this second LERTA designated area. He then submitted a LERTA application to, inter alia, the School District seeking an exemption. The application was considered by the school superintendent and solicitor, who denied it without a hearing. Thereafter, a complaint in equity was filed with the trial court, which ultimately determined that the matter was in the nature of a local agency appeal, transferred the case to the law side of the court, and determined that it would hear it de novo. After discovery, cross motions for summary judgment were filed. The court granted judgment for the School District and this appeal followed. Our scope of review from an order granting summary judgment is plenary. *Independent Oil &*

---

1. Act of December 1, 1977, P.L. 237, as amended, 72 P.S. § 4722–4727.

*Gas Association of Pennsylvania v. Board of Assessment Appeals of Fayette County,* 780 A.2d 795, 798 n. 3 (Pa.Cmwlth.2001), *petition for allowance of appeal granted,* 568 Pa. 621, 792 A.2d 1255 (2001). We will reverse the order only where there has been an error of law or a clear abuse of discretion. *Id.*

Taxpayer first argues that the School District's denial of an exemption violated LERTA because, once the Township designated a deteriorated area, the School District was **required** to pass its own LERTA resolution and that the only discretion it has pertains to the amount of the exemption it will authorize, not to whether it will authorize an exemption at all. He also argues that the School District acted in an arbitrary manner when it declined to authorize a LERTA exemption for Taxpayer's property after having authorized one for West Penn Center. The School District counters that its participation in a LERTA district is completely discretionary both in terms of recognizing such a district by the passage of its own resolution and granting an exemption. Finally, Taxpayer asserts that the School District denied him due process by refusing his request for an exemption without conducting a hearing.

Section 4(a) of LERTA provides:

Each local taxing authority *may* by ordinance or resolution exempt from real property taxation the assessed valuation of improvements to deteriorated properties and the assessed valuation of new construction within the respective municipal governing bodies designated deteriorated areas of economically depressed communities in the amounts and in accordance with the provisions and limitations hereinafter set forth. Prior to the adoption of the ordinance or

resolution authorizing the granting of tax exemptions, the municipal governing body shall affix the boundaries of a deteriorated area or areas, wholly or partially located within its jurisdiction, if any. At least one public hearing shall be held by the municipal governing body for the purpose of determining said boundaries. At the public hearing the local taxing authorities, planning commission or redevelopment authority and other public and private agencies and individuals, knowledgeable and interested in the improvement of deteriorated areas, shall present their recommendations concerning the location of boundaries of a deteriorated area or areas for the guidance of the municipal governing bodies, such recommendations taking into account the criteria set forth in the act of May 24, 1945 (P.L. 991, No. 385), known as the "Urban Redevelopment Law," for the determination of "blighted areas," and the criteria set forth in the act of November 29, 1967 (P.L. 636, No. 292), known as the "Neighborhood Assistance Act," for the determination of "impoverished areas," and the following criteria: unsafe, unsanitary and overcrowded buildings; vacant, overgrown and unsightly lots of ground; a disproportionate number of tax delinquent properties, excessive land coverage, defective design or arrangement of buildings, street or lot layouts; economically and socially undesirable land uses. Property adjacent to areas meeting the criteria of this section, but which would not otherwise qualify, may be included within the deteriorated area designated if the local taxing authority determines that new construction on such property would encourage, enhance or accelerate improvement of the deteriorated properties within economically depressed com-

munities. The ordinance or resolution shall specify a description of each such area as determined by the municipal governing body, as well as the cost of improvements per unit to be exempted, *and the schedule of taxes exempted as* hereinafter provided.

(Emphasis added).

■ We first address the question of whether the School District was required, under Section 4(a), to pass its own LERTA resolution merely because the Township passed one. Preliminarily, we note that this Court has consistently held that "[t]he plain language of the Act clearly contemplates that whether the exemption will be available and how it is to be obtained is left to the determination of the local taxing authorities." *Northwood Nursing Care and Convalescent Home Inc. v. City of Philadelphia*, 98 Pa.Cmwlth. 401, 511 A.2d 281, 283 (1986), *petition for allowance of appeal denied*, 515 Pa. 626, 531 A.2d 433 (1987), *appeal dismissed*, 484 U.S. 1037, 108 S.Ct. 767, 98 L.Ed.2d 854 (1988). We have further observed that LERTA makes the creation of the tax exemption optional and gives "the local authority broad power to determine what exemptions it wishes to provide." *MacDonald, Illig, Jones & Britton v. Erie County Board of Assessment Appeals*, 145 Pa.Cmwlth. 521, 604 A.2d 306, 313 (1992). A local governing authority is not required to enact a LERTA ordinance. *Id.*

In *MacDonald*, we had occasion to consider whether the language appearing in Section 6(a) of LERTA, 72 P.S. § 4727, was mandatory or directory. The language at issue there stated that "[t]he assessment agency **shall,** after completion of the new construction or improvement, assess separately the new construction or improvement and calculate the amounts of the assessment eligible for tax exemption in accordance with the limits established by the local taxing authorities ..." (Emphasis added.) We wrote:

> LERTA expressly provides that a taxing authority "may" do some things and "shall" do others. Thus the authority "may" enact a LERTA ordinance or resolution (Section 4(a)); it "may" join together with other authorities to establish uniform exemption programs (Section 4(b)); and it "may" exempt the assessment attributable to the actual cost of improvements *or* up to some uniform maximum cost (a method of implementation not involved in this case) (Section 5(a)). But where the authority chooses to create a LERTA exemption, it "shall" affix the boundaries of a deteriorated area before adopting the ordinance and hold a public hearing for determining those boundaries (Section 4(a)); it "shall" limit the exemption to the assessment value attributable to the actual cost of new construction or improvements (Section 5(b)); and it "shall," after completion of the new construction or improvements, separately assess the value of such projects and determine the amount eligible for exemption (Section 6(a)).
>
> We agree that the time and manner of conducting the assessment *are* of the essence under LERTA and that a directory-only interpretation could have a substantial effect on the benefits to be derived under the statute, as the facts of this case illustrate. The legislature's careful choice of words demonstrates an intent that the provisions employing the word "shall" be mandatory.

*MacDonald*, 604 A.2d at 311.

■ As in *MacDonald*, in determining here whether the statutory language in the

first sentence of Section 4(a) is mandatory or directory, we are guided by legislative intent. *Appeal of Crossley*, 60 Pa.Cmwlth. 351, 432 A.2d 263 (1981). Our state Supreme Court has observed in *Zimmerman v. O'Bannon*, 497 Pa. 551, 442 A.2d 674 (1982), that a mandatory interpretation is usually conferred upon the word "shall" whereas a discretionary one is usually conferred upon the word "may." Additionally, we observed in *MacDonald* that where, as here, both "shall" and "may" are used in the same statute, "it is a fair inference that the legislature realized the difference in meaning, and intended that the verbs used should carry with them their ordinary meanings." *MacDonald*, 604 A.2d at 311 n. 4 (quoting 2A C.D. Sands, Statutes and Statutory Construction § 57.11 (4th ed.1973)).

In *Zimmerman*, the Court construed Section 204(b) of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, 71 P.S § 732–204(b), which states that the Attorney General may appeal the decision of an agency by filing a petition for review "and **may** include in the petition a request for a stay or supersedeas of the implementation of the rule or regulation...." (Emphasis added.) The Court held that the use of the above-emphasized word gave the Attorney General discretion and, in so doing, examined other portions of the statute in question, noting that "shall" was used where no discretion clearly was meant to be vested, whereas "may" was used to indicate that an action was permissive. The Court wrote:

> "Shall" is first used to describe the Attorney General's obligation to review for form and legality all proposed rules and regulations. There can be no question that this obligation represents a mandatory responsibility. The section again

uses "shall" to require the notification, within 30 days after the submission that the rule or regulation was not in proper form or otherwise defective. "Shall" is also used directing the agency to publish the objection in the event that the agency elects to ignore the objection of the Attorney General. "Shall" is again used to direct, that if within 30 days after the submission the Attorney General has failed to act, the regulation will be deemed approved. In these four instances there can be no serious question that the General Assembly was acutely aware of the mandatory force of the word "shall."

> In contrast, each of the four instances where the word "may" was employed clearly related to permissive acts. The Commonwealth agency "may" revise the regulation in accordance with the Attorney General's objection, but is not required to do so. The agency "may" promulgate the rule with or without the suggested revisions. The Attorney General "may" appeal the decision of the agency but, obviously, is not mandated to do so. And finally, the Attorney General "may" request a stay or supersedeas but, obviously, is not required to do so. With such a scrupulous use of the terms "may" and "shall," *in the very subsection in question*, it is clear that the inclusion of "shall" when referring to the obligation of the court to grant the requested stay was intended to convey the lack of the court's discretion in that decision.

*Id.* at 558–59, 442 A.2d at 678. *Accord O'Neill v. Borough of Yardley*, 129 Pa. Cmwlth. 270, 565 A.2d 502 (1989), *petition for allowance of appeal denied*, 526 Pa. 643, 584 A.2d 324 (1990) ("may" is ordinarily permissive).

In the case *sub judice*, there is a logical reason for construing "may" as permissive. This reading provides each taxing authority in the LERTA-designated area the opportunity to make its own decision whether to offer tax exemptions to otherwise taxable properties in its district. This makes sense since each taxing authority knows and appreciates the state of its own fiscal affairs and can weigh the impact of its loss of tax revenue with the potential benefits of long-term economic revitalization. Construing the statute in this manner enhances the purpose of the Act, *i.e.*, to promote the development of deteriorated areas. In contrast, to hold otherwise would mean that once a municipality authorizes tax relief in a designated area, the county and school district would be bound by that municipal taxing decision. A municipality would be able to exercise control over the fiscal affairs of counties and school districts that we do not believe the legislature intended. We, thus, conclude that the word "may" in the first sentence of Section 4(a) gives the School District discretion as to whether to exempt a taxpayer's improvement from taxation in a LERTA designated area.

■ Having determined that the School District acted within its statutory powers in refusing to designate, as deteriorated, the area on which Taxpayer's property is situated, there remains the question of whether its failure to do so was capricious or discriminatory. On the facts here, we find no such impermissible conduct. The two areas Taxpayer seeks to compare were designated by two different Township ordinances at two different times. The willingness of the School District to accept the first one and not the second, especially where there had been a significant passage of time, does not indicate any improper conduct and Taxpayer points to no other facts that would give rise to an inference of discrimination.

■ In a related issue, Taxpayer contends that the School District's failure to authorize exemptions for the LERTA district encompassing his property, while authorizing them for the district encompassing West Penn Center, violated the Uniformity Clause.[2] A taxpayer who alleges that the administration of a tax violates principles of uniformity *with regard to others in its class*, must demonstrate a deliberate and purposeful discrimination in the application of the tax. *Community Options, Inc. v. Board of Property Assessment, Appeals and Review*, 764 A.2d 645, 653–654 (Pa.Cmwlth.2000), *petition for allowance of appeal granted*, 567 Pa. 730, 786 A.2d 991 (2001). We agree with the School District that the fatal flaw here is Taxpayer's insistence that the "class" is deteriorated property as defined by *Robinson Township*. Rather, the class is deteriorated property as defined by the *School District*. To hold otherwise would permit Robinson Township to create rights and liabilities on Taxpayer's behalf against a separate political entity. We hold that, within the correctly designated class, there is simply no lack of uniformity shown since the refusal of the School District to accept the 1999 LERTA designation requires only that all taxpayers falling within that designated area be treated uniformly, a situation Taxpayer does not even allege has not occurred.

■ Finally, Taxpayer asserts that it was unconstitutional to deny it a due pro-

---

2. The Uniformity Clause in the Pennsylvania Constitution provides:

All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.
PA. CONST., art. VIII, § 1.

cess hearing and an adjudication. We disagree. First, the LERTA statute itself creates no right to a hearing and adjudication for a Taxpayer before a taxing body where that taxing body has not adopted a LERTA designation. Section 6 of LERTA, 72 P.S. § 4727, which establishes an appeal procedure regarding reassessments and exemptions, is clearly conditioned upon someone seeking a "tax exemption *pursuant to ordinances or resolutions adopted* pursuant to this act. . . ." (Emphasis added.) Second, Section 553 of the Local Agency Law, 2 Pa.C.S. § 553, requires a hearing only where there is an "adjudication" issued. The term "adjudication" is defined in Section 101 of the Local Agency Law, 2 Pa.C.S. § 101, as:

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. . . .

In this instance, we hold that there was no property right in a tax exemption since exemptions had not been authorized by the School District for the area in question. Therefore, neither a hearing nor an adjudication was required.[3]

---

**3.** Taxpayer relies on *Academy Plaza Associates, Ltd. v. Board of Revision of Taxes*, 94 Pa.Cmwlth. 517, 503 A.2d 1101 (1986), wherein this Court stated, "The right to apply for an exemption is a property right and as such is afforded the safeguards surrounding procedural due process as applied to administrative bodies." *Id.* at 1103. In *Academy Plaza*, a taxpayer, eight months after obtaining a building permit, applied for a tax exemption. The application was denied on the basis that it was untimely filed. The taxpayer's request to file the application nunc pro tunc was denied by the trial court and he appealed to this Court. He contended here that his late filing was because the Board of Revision of Taxes failed to provide him with adequate notice of his right to claim an ex-

Based on the foregoing discussion, we affirm the order of the trial court.

### ORDER

**NOW,** July 19, 2002, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

---

emption and that the lack of notice violated due process. In the context of analyzing whether the notice was sufficient, we made the above-quoted statement. We reject the notion that the case stands for the proposition that anyone seeking a tax exemption **where the taxing authority has not, by ordinance or resolution, authorized any exemptions to be given** is entitled to a full due process hearing. The case held only that the notice of the tax exemption application process, which appeared in the building permit the taxpayer had been issued, was sufficient to meet the notice requirement of due process that an exemption procedure existed.