John Khula,  
                     Appellant       :  
                           :  
             v.            :  
                           :  
State Correctional        :   No. 1728 C.D. 2015  
Institute-Somerset        :   Submitted: March 11, 2016  

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge  
                 HONORABLE ANNE E. COVEY, Judge  
                 HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge  

OPINION BY  
JUDGE COVEY                      FILED: August 26, 2016  

John Khula (Khula) appeals from the Somerset County Common Pleas Court's (trial court) August 31, 2015 order granting the State Correctional Institution at Somerset's (SCI-Somerset) summary judgment motion (Motion) and dismissing Khula's first amended complaint. Khula presents two issues for this Court's review: (1) whether the trial court erred in concluding that Khula was not qualified to maintain his position; and (2) whether the trial court erred in concluding that SCI-Somerset had no obligation to engage in an interactive process with Khula or to afford him a reasonable accommodation. After review, we affirm.

On June 16, 1996, Khula began his employment with the Commonwealth of Pennsylvania as an Industrial Arts and Crafts Teacher at SCI-Houtzdale, at which time he was not required to obtain Vocational I Certification. On June 2, 2005, Khula interviewed for a Mechanical Trades/Drafting Computer-Aided Design position at SCI-Somerset. At the interview, Khula signed an acknowledgement of the Vocational Teacher Certification Requirements. On August 15, 2005, Khula accepted this new position at SCI-Somerset. Khula worked from

2005 until September 2007 without an Intern teaching certificate and evidenced no difficulty performing his teaching responsibilities. In 2007, the Pennsylvania Department of Education (Department) issued Khula an Intern teaching certificate as a provisional means of maintaining certification under a three-year license which would expire in August 2010. During this period, although Khula completed all of the Vocational I Certification classroom requirements, he repeatedly failed the Praxis exam which was necessary to receive his teaching certification. Despite that each of Khula's annual performance evaluations from 2005 to 2010 reflected his satisfactory job performance, he was reminded that the Vocational I Certificate was required and that he should be working on its completion.

On February 16, 2011, SCI-Somerset charged Khula with Failure to Attain Vocational I Certification. On February 25, 2011, a Pre-Disciplinary Conference (PDC) was conducted for Khula to respond to the charge. Khula explained that he was having difficulty passing the Praxis exam and that he felt something was wrong with him because he always had learning difficulties when he was younger. He requested more time to pass the test, either in the form of an emergency certification or simply an extension of time. SCI-Somerset held Khula's PDC in abeyance to give him the opportunity to re-take the test. Khula took the Praxis exam in March 2011, but failed it again.

Thereafter, Khula contacted the Office of Vocational Rehabilitation (OVR) for assistance, and was scheduled with John Bixler, Ph.D. (Dr. Bixler) for psychological testing. Another PDC was held on April 18, 2011, at which Khula explained that he had anxiety taking the test and presented information from the OVR regarding the tests to determine if he had a learning disability. He explained his belief that he had a learning disability and, if that was the case, he could receive more time from the Praxis Center to take the test. Khula once again reiterated his request to have his job preserved while he attempted to pass the Praxis exam with

2

accommodations.  He was advised that only the testing center, not the institution, could grant him an accommodation.  As a result of the second PDC panel hearing, SCI-Somerset terminated Khula's employment in early May 2011 for failure to meet essential statutory/regulatory teacher certification job requirements.

On May 2, 2011, Khula received the results of Dr. Bixler's psychological examination, which revealed that Khula suffered from a learning disability, Attention Deficit Hyperactivity Disorder (ADHD), that inhibited him from passing the necessary exam without accommodation.  Khula requested and was granted accommodations of additional time and a private/quiet room during the test session.  He re-took the Praxis exam with the accommodations, but again failed. Khula did not subsequently re-take the exam because his unemployment rendered him without the funds to do so.

Khula filed a Union Grievance on May 18, 2011, alleging that he was dismissed without just cause in violation of his collective bargaining agreement.  On June 10, 2011, the grievance was denied; however, on February 21, 2013, the Union reached a settlement with SCI-Somerset, wherein Khula's dismissal would be treated as a resignation with the possibility of reinstatement if Khula passed the Praxis exam and obtained his required certification.  *See* Supplemental Reproduced Record (S.R.R.) Vol. 1 at 102-104.

On February 27, 2013, Khula filed a complaint with the trial court against SCI-Somerset under the Pennsylvania Human Relations Act (PHRA)[1] alleging disability discrimination.  On April 24, 2013, SCI-Somerset filed preliminary objections to Khula's complaint.[2]  On January 10, 2014, Khula filed his first amended complaint with the trial court against SCI-Somerset for disability

---

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.

[2] A hearing was scheduled, but was subsequently canceled.  The preliminary objections were never ruled upon.

discrimination/failure to accommodate. On January 28, 2014, SCI-Somerset filed an answer to Khula's first amended complaint. On August 5, 2015, SCI-Somerset filed its Motion. On August 31, 2015, the trial court granted SCI-Somerset's Motion and dismissed Khula's first amended complaint. On September 11, 2015, Khula filed a Notice of Appeal with this Court.[3] Also on September 11, 2015, the trial court filed an order directing Khula to file a Statement of Errors Complained of on Appeal (1925(b) Statement). Khula filed his 1925(b) Statement on September 24, 2015. On November 4, 2015, the trial court filed its Pa.R.A.P. 1925(a) opinion.

> Initially, Section 5 of the PHRA provides:
>
> It shall be an unlawful discriminatory practice, **unless based upon a bona fide occupational qualification**. . . .
>
> (a) For any employer because of the . . . **non-job related handicap or disability** . . . of any individual . . . to discharge from employment such individual . . . if the individual . . . is the best able and most competent to perform the services required. . . .

43 P.S. § 955 (emphasis added). Further, Section 4(p.1) of the PHRA defines "the term **'handicap or disability,'** [as]: (1) a physical or mental impairment which

---

[3] "Our scope of review from an order granting summary judgment is plenary. We will reverse the order only where there has been an error of law or a clear abuse of discretion." *Jennison Family Ltd. P'ship v. Montour Sch. Dist.*, 802 A.2d 1257, 1259-60 (Pa. Cmwlth. 2002) (citation omitted).

> Summary judgment is properly granted 'whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report[.]' Pa.R.C[].P. No. 1035.2(1). Summary judgment may be granted only in those cases where the right is clear and free from doubt. The moving party has the burden of proving that there is no genuine issue of material fact. Furthermore, the record and any inferences therefrom must be viewed in the light most favorable to the non-moving party, and any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Laich v. Bracey*, 776 A.2d 1022, 1024 (Pa. Cmwlth. 2001) (citations omitted).

substantially limits one or more of such person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment[.]" 43 P.S. § 954(p.1). In addition, under Section 1630.4(a)(1) of the Americans with Disabilities Act (ADA) Regulations:[4]

> It is unlawful for a covered entity to discriminate on the basis of disability against a **qualified individual** in regard to:
>
> . . . .
>
> (ii) Hiring, upgrading, promotion, award of tenure, demotion, transfer, layoff, termination, right of return from layoff, and rehiring;
>
> . . . .
>
> (ix) Any other term, condition, or privilege of employment.

29 C.F.R. § 1630.4(a)(1) (emphasis added). "The term 'qualified,' with respect to an individual with a disability, means that **the individual satisfies the** requisite skill, experience, education and other **job-related requirements of the employment position** such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." Section 1630.2(m) of the ADA Regulations, 29 C.F.R. § 1630.2(m) (emphasis added).

Moreover, Pennsylvania courts have repeatedly recognized that disability discrimination cases brought under the PHRA are interpreted in line with the ADA. *See Stultz v. Reese Bros., Inc.*, 835 A.2d 754 (Pa. Super. 2003); *Imler v. Hollidaysburg Am. Legion Ambulance Serv.*, 731 A.2d 169 (Pa. Super. 1999); *Kelly v. Drexel Univ.*, 94 F.3d 102 (3rd Cir. 1996). In general, both the ADA and the PHRA prohibit a covered entity from discriminating against a "qualified individual" because of a disability. 42 U.S.C. § 12112(a); 43 P.S. § 955.

---

[4] Also referred to as the Equal Employment Opportunity Commission Regulations.

Finally,

> [t]he[] governing legal standards for matters of disability discrimination and reasonable accommodations were succinctly, yet comprehensively, described by the U.S. Court of Appeals for the Third Circuit in *Taylor v. Phoenixville School District,* 184 F.3d 296 (3d Cir. 1999).
>
>> [The U.S. Court of Appeals for the Third Circuit has] held that in order for a plaintiff to establish a prima facie case of discrimination under the ADA, the plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) **he is otherwise qualified to perform the essential functions of the job**, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.
>
> *Id.* at 306 (quotation marks omitted). Continuing, the [C]ourt addressed the issue of reasonable accommodations. '**Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities**, but also includes failing to make reasonable accommodations for a plaintiff's disabilities.' *Id.*

*Allen v. State Civil Serv. Comm'n*, 992 A.2d 924, 932 (Pa. Cmwlth. 2010) (emphasis added).

Khula first argues that the trial court erred in concluding that Khula was not qualified to maintain his position since a Vocational I Certification was not an essential function of his position. Particularly, Khula contends that his position was constructed in a manner that specifically avoided the teaching certification requirement. He further avers that the requirements for his position are not the same as those for school teachers.

Khula was expressly hired by SCI-Somerset as a Mechanical Trades/Drafting Computer-Aided Design teacher. The State Civil Service Job

6

Specifications (Specifications) define the position as "professional education work in providing vocational instruction in a mechanical trade occupation area to inmates **at a state correctional institution**." S.R.R. Vol. 2 at 390 (emphasis added). The Specifications provide in pertinent part, that Khula's position is bound by the following "NECESSARY SPECIAL REQUIREMENT: Possession of or eligibility for a current [Department] Vocational Certificate I or II for the specified parenthetical; or Possession of or eligibility for a [Department] Vocational Intern Certificate for the specified parenthetical; or Eligibility for a [Department] Emergency Certificate for the specified parenthetical[.]" S.R.R. Vol. 2 at 391. Further, "[e]mployees who are teaching school[-]age youth must maintain the minimum teaching certification for the specified parenthetical as defined by the [Department's] current regulations[,]" as a "CONDITION OF EMPLOYMENT". S.R.R. Vol. 2 at 391-392.

Moreover, on June 2, 2005, Khula signed the "VOCATIONAL TEACHER CERTIFICATION REQUIREMENTS" which reads: "My signature indicates that **I have been informed that I must obtain and maintain Pennsylvania teaching certification for the position for which I am applying** [and], if certification is not obtained and maintained, I will be terminated since I will no longer meet the job requirements." S.R.R. Vol. 1 at 67 (emphasis added). The acknowledgement further describes:

Vocational Certification Progression

During the first year of Department of Corrections['] employment, the employee must successfully complete the Occupational Competency Assessment, be accepted for admission into a Vocational Education Teacher Certification Program, and apply for the Intern teaching certificate.

One year after the [I]ntern teaching certificate is issued, the employee must have successfully completed (or be enrolled for) six (6) credits towards the Vocational Instructional I teaching certìficate.

7

**Intern [teaching] certificate becomes invalid three years after the issue date. The employee must meet requirements to apply for a Vocational Instructional I certificate before the intern certificate becomes invalid** (three years after issue date). Note: This may occur during the fourth year of teaching, since the intern certificate is valid for three calendar years from issue date.

*Id.* (emphasis added). Finally, Khula admits in his first amended complaint that "[i]n order to remain eligible to maintain his position of employment, [] Khula was required to complete specific educational requirements and pass a Praxis exam to obtain certification." Khula's First Amended Complaint at ¶ 5.

Because Khula has always known that the Vocational I Certification was required for his continued employment, but he did not earn the Vocational I Certification, he failed to satisfy the job-related requirement to maintain his employment with SCI-Somerset. Khula focuses on the condition of employment with school-age students, claiming this is the difference between teaching at a school district and teaching at a corrections facility.[5] However, Khula's signed acknowledgement makes no mention of his students' ages, but rather expressly states his employment will be terminated if he did not obtain the Vocational I Certification. It was on this basis that Khula's employment was terminated, and not "a prejudice [or] fear of disabilities[.]" *Allen*, 992 A.2d at 932 (quoting *Taylor*, 184 F.3d at 306).

---

[5] The Dissent focuses on Khula's school-age students argument, specifically stating: "Because Khula does not teach students under 21 years of age, he is not required to obtain Vocational I Certification." Dissenting Op. at 1. However, the Dissent ignores the fact that the State Civil Service Job Specifications require Vocational I Certification, Claimant's signed acknowledgement of said requirement, and Khula's admission in his first amended complaint that the Vocational I Certification was in fact a job-related requirement. *See* S.R.R. Vol. 2 at 391, S.R.R. Vol. 1 at 67, Khula's First Amended Complaint at ¶ 5. This Court has no authority to ignore or in any manner rewrite the State Civil Service Job Specifications. Thus, in accordance with well-established law, the trial court properly determined that Khula was not qualified to maintain his position.

8

Thus, we discern no error in the trial court's conclusion that Khula was not qualified to perform his position because he did not obtain his Vocational I Certification as it was a "job-related requirement[] of [his] position." 29 C.F.R. § 1630.2(m).

Khula next asserts that the trial court erred in concluding that SCI-Somerset had no obligation to engage in the interactive process or to afford him a reasonable accommodation such as "SCI-Somerset maintaining [] Khula's job and communicating with [the State] Civil Service [Commission] to determine if an extension or a waiver could be obtained." Khula Br. at 13.

This Court has held:

> **Once [an employee] inform[s] [an employer] of [his] need for a reasonable accommodation, . . . it then ha[s] the obligation to initiate an interactive process to determine whether [he] may [be] able to perform the essential functions of [his] job with reasonable accommodation**. It is within this interactive process that a court must isolate the cause of the breakdown and then assign responsibility. In assigning responsibility for a breakdown in the interactive process, '**courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary**.' *Taylor*, 184 F.3d at 312. The *Taylor* [C]ourt went on to note that, '[o]nce the employer knows of the disability and the employee's desire for accommodations, it makes sense to place the burden on the employer to request additional information that the employer believes it needs.' *Id.* at 315. The [C]ourt stated:
>
>> [t]he interactive process, as its name implies, requires the employer to take some initiative . . . [.] The interactive process would have little meaning if it was interpreted to allow employers, in the face of a request for accommodation, simply to sit back passively, offer nothing, and then, in post-termination litigation, try to knock down every specific accommodation as too burdensome. That's not the proactive process intended: it does not help avoid litigation by bringing the parties to a

9

> negotiated settlement, and it unfairly exploits the employee's comparative lack of information about what accommodations the employer might allow.

*Id.* at 315-16.

*Canteen Corp. v. Pa. Human Relations Comm'n*, 814 A.2d 805, 813 (Pa. Cmwlth. 2003) (citation and footnote omitted; emphasis added).

Importantly, although Khula was aware of the Vocational I Certification requirement as of the date of his initial job interview, **June 2, 2005**, it was not until "**February 25, 2011** [at his first PDC] and again on or about April 18, 2011, [at his second PDC] [that] [] Khula made his supervisors aware of his [potential] disability and his [possible] need for an accommodation to complete the Praxis [exam] successfully." Khula's First Amended Complaint at ¶ 10. "In order to pass the [Praxis] exam, [] Khula requires the reasonable accommodation of a private room and additional time to take the test." Khula's First Amended Complaint at ¶ 8. As the trial court properly stated, this was "an accommodation which [SCI-Somerset] could not offer." Trial Ct. Op. at 7. Khula admitted at his deposition that the Indiana University of Pennsylvania and the Praxis Center administered the Praxis exam and that SCI-Somerset had no involvement with the Praxis exam. *See* Reproduced Record (R.R.) Vol. II at 180a-181a. Moreover, Khula did take the Praxis exam with the requested accommodations, albeit after his discharge, and still did not pass.

Thus, SCI-Somerset did not "fail[] to participate in good faith or fail[]. . . to help [Khula] determine what specific accommodations [were] necessary." *Canteen Corp.*, 814 A.2d at 813 (quoting *Taylor*, 184 F.3d at 312). Indeed, before Khula's ADHD was diagnosed and he asked for the specific test-taking accommodation, i.e., extra time and a private room, SCI-Somerset held the first PDC in abeyance, so that Khula could re-take the Praxis exam for the sixth time in March

2011.[6]  *See* R.R. Vol. II at 209a-210a.  Because SCI-Somerset had no control over the requested accommodation, and Khula had in fact received the requested accommodations, the trial court did not err in concluding that SCI-Somerset had no obligation to engage in the interactive process or provide the reasonable accommodation.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

_____

[6] Khula's claim that SCI-Somerset should have given Khula an indefinite amount of time to receive a test-taking accommodation in order to pass the Praxis exam is disingenuous since, under the terms of his Union settlement, Khula was entitled to reinstatement if and when he passed the Praxis exam and, even with the accommodations, he failed it.

11

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Khula,                          :
                Appellant            :
                                  :
           v.                        :
                                  :
State Correctional                   :    No. 1728 C.D. 2015
Institute-Somerset                   :

## O R D E R

AND NOW, this 26th day of August, 2016, the Somerset County Common Pleas Court's August 31, 2015 order is affirmed.


_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Khula,                              :
                                         : No. 1728 C.D. 2015
                        Appellant        : Submitted: March 11, 2016
                                         :
            v.                           :
                                         :
State Correctional                       :
Institute-Somerset                       :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


DISSENTING OPINION
BY SENIOR JUDGE FRIEDMAN                      FILED:  August 26, 2016


        Because Khula does not teach students under 21 years of age, he is not required to obtain Vocational I Certification.  Therefore, I would conclude that the trial court erred in determining that Khula was not qualified to maintain his position. Accordingly, I respectfully dissent.

        Khula has worked in his current position at SCI-Somerset as a vocational teacher in Mechanical Trades/Drafting Computer-Aided Design since August 2005. Khula has consistently received commendable and satisfactory ratings in his job performance evaluations.

        The State Civil Service Job Specifications (Specifications) for Khula's position provide that "[e]mployees who are teaching school[-]age youth must

maintain the minimum teaching certification . . . as a condition of employment." (S.R.R. at 391-92.) This Specification is consistent with section 912-B(b)(1) of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, added by the Act of June 22, 1999, P.L. 99 (Act 15), 71 P.S. §310-12(b)(1), which provides that "[e]mployes who provide inmate education and training to *school-age* inmates shall hold appropriate State certification as required by Federal and State law."[1] (Emphasis added.)

Khula, however, does not teach students under 21 years of age. (R.R. at 206a.) As stated in the Proposed Education Plan for the 2010-2011 year, "no student under twenty-one years of age should be placed in a vocational program." (Ex. 3 at 23; S.R.R. at 342.) Steven Davy, Director of the Bureau of Correction Education for the Department of Corrections, testified that the age requirement "was to make sure that any student that would be assigned to a vocational program was no longer covered by either the special education law or the regular education law." (R.R. at 237a.) Davy specifically acknowledged that Act 15 does not apply to vocational teachers. (*Id.*) Thus, because Khula is a vocational teacher who does not teach anyone under the age of 21, a Vocational I Certification is not required.

---

[1] "There are two classifications in which school age applies. One is for regular education and that is the age of 18 or younger. Where special education is concerned, it is age 21." (R.R. at 235a.)

Section 5 of the Pennsylvania Human Relations Act[2] provides:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification . . . .

(a) For any employer because of the . . . non-job related handicap or disability . . . of any individual . . . to discharge from employment such individual . . . if the individual . . . is the best able and most competent to perform the services required.

43 P.S. §955.

Additionally, section 1630.4(a)(1) of the Americans with Disabilities Act regulations provides:

It is unlawful for a covered entity to discriminate on the basis of disability against a qualified individual in regard to:

. . .

(ii) Hiring, upgrading, promotion, award of tenure, demotion, transfer, layoff, termination, right of return from layoff, and rehiring;

. . .

(ix) Any other term, condition, or privilege of employment.

29 C.F.R. §1630.4(a)(1). "The term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds

---

[2] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §955.

or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. §1630.2(m).

"Removal of personnel in the civil service must be based on merit criteria which are relevant to proper execution of the employee's duties and which are job-related and touch in some logical and rational manner upon competency and ability." *Borough of Blawnox Council v. Olszewski*, 477 A.2d 1322, 1326 (Pa. 1984). Although Khula signed a form acknowledging his need to obtain Vocational I Certification, the Specifications *do not* require Khula to obtain Vocational I Certification because he does not teach students under the age of 21. Khula has demonstrated his competency and ability to perform his duties as a vocational teacher since 2005. I question the dismissal of an employee who has a proven teaching record and who has completed an 18-credit program necessary for Vocational I Certification but who, because of a learning disability, is unable to pass the Praxis exam necessary to complete the certification.

Neither the Specifications nor Act 15 require Vocational I Certification for a vocational teacher such as Khula who instructs students over the age of 21. Because Khula is qualified to maintain his position, I would reverse the trial court's order granting SCI-Somerset's motion for summary judgment.

_____
ROCHELLE S. FRIEDMAN, Senior Judge